James **HEATH, Harold Lancy, Harold Keith, Johnny Edwards, Kenneth Thompson, Edward Ackerson, Michael R. Blum, Herbert Hayes, David F. Burke, Gary W.J. Bevins, Bailey J. Hayes, and Gene H. Gregg, Plaintiffs–Appellants,**

v.

Joseph M. **DE COURCY, Norman A. Murdock, Robert E. Taft II, as Commissioners of Hamilton County, Defendants,**

Simon L. **Leis, Jr., as Sheriff of Hamilton County, Defendant–Appellee.**

No. 88–4167.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 25, 1989.

Decided Nov. 3, 1989.

Stephen H. Olden (argued), Edward S. Stokan, Legal Aid Soc. of Cincinnati, Cincinnati, Ohio, for plaintiffs-appellants.

Robert E. Taylor, Asst. Pros. Atty. (argued), Cincinnati, Ohio, for defendant-appellee.

Before KENNEDY and NELSON, Circuit Judges; and WISEMAN, Chief District Judge.[*]

KENNEDY, Circuit Judge.

This appeal forces us to consider the appropriate standard for modifying a consent decree entered on the agreement of the parties in the context of institutional reform litigation. Appellee urges that we apply a somewhat relaxed standard for modifying such decrees, while appellants contend that we adopt a more rigid standard and allow modification only upon the showing of a "grievous wrong evoked by new and unforeseen conditions." *United*

---

[*] The Honorable Thomas A. Wiseman, Jr., Chief Judge, United States District Court for the Middle District of Tennessee, sitting by designation.

*States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932).[1] Because of the problems unique to consent decrees in the context of institutional reform, we adopt the former standard and AFFIRM the judgment of the District Court.

Appellants are all inmates of a metropolitan county jail in Hamilton County, Ohio. They appeal the District Court's order which granted in part appellee's motion to modify an Agreed Modification of Agreed Final Judgment. 704 F.Supp. 799. Appellants claim that in granting the motion, the District Court applied the incorrect legal standard, abused its discretion, and granted the motion absent sufficient evidence of record.

Appellants originally sued appellee under 42 U.S.C. § 1983, challenging the conditions of their confinement in the Hamilton County jail. They contended that the jail's policy of triple-celling inmates violated their eighth and fourteenth amendment rights. In 1980, the court granted appellants' motion for a preliminary injunction which prohibited triple-celling and required a phased-in reduction of the jail population. The parties subsequently settled all claims raised in the suit. The court entered an Agreed Final Judgment in September 1985, but appellants appealed that judgment because the judge modified it *sua sponte* so as to limit its duration. This Court remanded for clarification by the District Court, and the appeal was voluntarily dismissed in September 1987.

A little over a month after the Agreed Final Judgment was entered, the jail population began to exceed the design capacity of the facility. In response, appellants filed a motion for contempt against the county officials because of the overcrowding and use of cots. Following studies and negotiations, the county formulated an overcrowding reduction plan, which it submitted to the court, along with a motion to modify the consent decree. A settlement was reached which prohibited the use of cots, set inmate population caps, and limited double-celling to a specific category of low-risk inmates. It also empowered the sheriff to refuse admission of new inmates and to authorize the release of some inmates to ensure compliance with the population caps. When appellee refused to execute the settlement decree, appellants filed a motion to enforce it in September 1987. Pending a ruling on that motion, appellee Leis, sheriff of Hamilton County, sought and was given an order limiting the prison population to 1,050 and authorizing him to release misdemeanant inmates as necessary. In mid October, the Hamilton County Municipal Court judges intervened as a group, claiming that their state law sentencing powers were being eroded. Their intervention was limited to being heard on the questions of inmate release procedures and the order of inmate release.

Appellants' motion to enforce the amended decree was granted in November. Appellee, joined by the Hamilton County Municipal Court judges, appealed claiming that the settlement agreement could not be enforced. Both appeals were dismissed as premature. The parties then agreed on changes to the settlement agreement, although the sheriff was probably aware or should have been aware that the agreement would not effectively meet the population limits placed on the jail.[2] The agreement was approved by the lower court on November 10, 1987. Entitled the Agreed

---

**1.** It is important to note that in *Swift* the Court said the standard for modifying a decree is the same whether entered after trial or upon consent of the parties:

A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need.... The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or condi-

tions and are thus provisional and tentative.... The result is all one whether the decree has been entered after litigation or by consent.

286 U.S. at 114, 52 S.Ct. at 462 (citations omitted).

**2.** While we do not condone the sheriff's decision to enter into the settlement agreement when he knew or suspected it would not meet the population limits, it does not control our disposition of the case.

Modification of Agreed Final Judgment, it became effective June 1, 1988, by an order dated May 20, 1988.

On June 6, 1988, appellee Sheriff Leis filed a motion to modify the Agreed Modification of Agreed Final Judgment under Fed.R.Civ.P. 60(b). The appellant inmates filed a response and, following a hearing, the court granted the motion in part and denied it in part. Specifically, Sheriff Leis moved to change the category of those capable of being double-celled from those who were "classified as minimum security and who are male misdemeanants" to those who are "classified as minimum security." He also sought to include female inmates in the class capable of being double-celled. The District Court granted the motion insofar as it modified the class to include all minimum security prisoners, including felons. It denied the motion insofar as it sought to include female prisoners in the class. Appellant inmates appeal.

The general standard for modifying consent decrees was set out by the Supreme Court in *Swift*. *Swift* involved modification of a "commercial" consent decree—i.e., a decree entered into by the parties which regulated business practices as between them. In determining whether to modify a consent decree which prohibited defendants from dealing in certain businesses and commodities, Justice Cardozo stated the test as follows: "Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned." *Swift*, 286 U.S. at 119, 52 S.Ct. at 464. Appellants contend that under the *Swift* standard, the District Court erred in modifying the consent decree because there was no "grievous wrong" resulting from changed circumstances.

In granting appellee's motion to modify the consent decree, the District Court re-

lied on *Stotts v. Memphis Fire Dep't*, 679 F.2d 541 (6th Cir.1982), *rev'd on other grounds*, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984). In *Stotts*, the Court stated that a consent decree can be modified (1) when done in accordance with basic principles of contract law, (2) when the decree is void or no longer equitable, or (3) when the circumstances of the case change. *Id.* at 560–61. In addition, it was stated that "[a] consent decree may also be modified 'where a better appreciation of the facts in the light of experience indicates that the decree is not properly adapted to accomplishing its purposes.' *Chance v. Board of Examiners*, 561 F.2d 1079, 1086 (2d Cir.1977), *quoting King–Seeley Thermos Co.*, 418 F.2d [31] at 35 [2nd Cir. 1969]." *Id.* at 562.[3] Although *Stotts* apparently approved of a standard less rigid than *Swift* for modifying an "institutional" consent decree—i.e., a consent decree which affects the operation of a governmental institution or organization—it is not entirely clear which standard the court relied on in reaching its decision.[4] The District Court in the instant appeal based its decision on the latter rule in *Stotts*. It concluded that in order to carry out the judgment it entered in the case, it would modify the classification criteria for double-celling as proposed by Sheriff Leis. The court found that there would be no increased risk by double-celling minimum security inmates being held pre-trial on misdemeanor charges, pre-trial on felony charges, or serving split sentences on felony charges. The modification was "mandated by common sense as it does not increase the risk to inmates, and permits more effective utilization of the government's resources in the safe, orderly and humane administration of the jail, thereby promoting the public interest of having reasonable and lawful sentences served." We hold that the District Court did not err in

---

3. *Stotts* involved modification of a consent decree which sought to remedy past hiring discrimination by the Memphis Fire Department. Modification was deemed necessary because layoffs, required by unanticipated economic circumstances, would have thwarted the goal of the consent decree as it was originally entered.

4. It should be noted that relief under Rule 60(b) was "not squarely presented" in *Stotts*. 679 F.2d at 562. It is therefore not binding precedent.

applying this flexible standard in modifying the consent decree.

Several courts of appeals have carved out an exception to the rigid *Swift* standard to permit modification of consent decrees in the context of institutional reform litigation. We agree with those courts that consent decrees which regulate institutional conduct are fundamentally different from consent decrees between private parties. The latter are born by agreement of the parties and only their rights and liabilities are affected. Presumably, the parties have carefully considered the effects of the agreement and have entered into it with open eyes, aware and capable of anticipating its consequences. While institutional consent decrees are similarly born by agreement between the parties, they affect more than the rights of the immediate litigants. The decrees reach beyond the parties involved directly in the suit and impact on the public's right to the sound and efficient operation of its institutions. Broader judicial discretion to modify the parties' agreement is required so that the agreed upon solution to the problem giving rise to the litigation may be fine-tuned to accomplish its goal. The efficacy and consequences of a decree directing institutional reform cannot be seen clearly from the courtroom. Time and experience may yield new knowledge that compels modification of the original agreement if its end, the operation of the institution in a manner that meets constitutional conditions, is to be met. In *New York State Ass'n for Retarded Children, Inc. v. Carey*, 706 F.2d 956 (2d Cir.), *cert. denied*, 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983), the Second Circuit stated:

> [I]n institutional reform litigation ... judicially-imposed remedies must be open to adaptation when unforeseen obstacles present themselves, to improvement when a better understanding of the problem emerges, and to accommodation of a wider constellation of interests than is presented in the adversarial setting of the courtroom.

*Id.* at 969. The court then went on to note that "[a]s experience with this type of litigation increases, a consensus is emerging among commentators in favor of modification with a rather free hand." *Id.* at 970 (citing Note, *Implementation Problems in Institutional Reform Litigation*, 91 Harv. L.Rev. 428, 436 (1977) (judges should remain flexible and "respond to the need, present in most institutional reform cases, for phased implementation and small alterations in strategic objectives as new knowledge is acquired"); Special Project, *The Remedial Process in Institutional Reform Litigation*, 78 Colum.L.Rev. 784, 818 (1978) ("[g]iven the detail of these decrees and the lack of judicial expertise, substantive modification and adjustment are unavoidable and should willingly be undertaken")). As quoted in *Carey*, Professor Owen Fiss noted:

> The judge must search for the "best" remedy, but since his judgment must incorporate such open-ended considerations as effectiveness and fairness, and since the threat and constitutional value that occasions the intervention can never be defined with great precision, the particular choice of remedy can never be defended with any certitude. It must always be open to revision, even without the strong showing traditionally required for modification of a decree, namely, that the first choice is causing grievous hardship. A revision is justified if the remedy is not working effectively or is unnecessarily burdensome.

Fiss, *The Supreme Court–1978 Term—Foreword: The Forms of Justice*, 93 Harv. L.Rev. 1, 49 (1979) (footnote omitted).

Several other circuits have adopted this relaxed standard. *See Plyler v. Evatt*, 846 F.2d 208, 212 (4th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 241, 102 L.Ed.2d 230 (1988) (despite "a strict standard for modification of consent decrees between private parties, this standard is inappropriate in institutional reform litigation for 'the unique nature and demands of institutional reform litigation necessitate a more flexible approach to modification'") (citation omitted); *Badgley v. Santacroce*, 853 F.2d 50 (2d Cir.1988) (flexible standard upheld, but modification not allowed); *Newman v. Graddick*, 740 F.2d 1513, 1520 (11th Cir.

1984) (prisoner release case holding where "a consent decree involves the supervision of changing conduct or conditions and is therefore provisional, modification may be more freely granted"); *Nelson v. Collins,* 659 F.2d 420 (4th Cir.1981); *Philadelphia Welfare Rights Organization v. Shapp,* 602 F.2d 1114, 1120–21 (3d Cir.1979), *cert. denied,* 444 U.S. 1026, 100 S.Ct. 689, 62 L.Ed.2d 660 (1980) (court has power to modify "complex ongoing remedial [consent] decree"). *See also Twelve John Does v. District of Columbia,* 861 F.2d 295 (D.C. Cir.1988). We agree with those circuits and hold that in the area of institutional reform litigation, consent decrees arrived at by mutual agreement of the parties involved are subject to a lesser standard of modification than that dictated by *Swift.* To modify such consent decrees, the court need only identify a defect or deficiency in its original decree which impedes achieving its goal, either because experience has proven it less effective, disadvantageous, or because circumstances and conditions have changed which warrant fine-tuning the decree. A modification will be upheld if it furthers the original purpose of the decree in a more efficient way, without upsetting the basic agreement between the parties.

This standard will require the trial court to balance the interest in preserving consent decrees entered into by agreement between private parties against the public interests sought to be achieved through modification of the decree. This standard is not inconsistent with *Swift,* since in the area of commercial consent decrees—which typically involve primarily private, not public, interests—any public interest in modifying the decree will ordinarily be less than the interest in honoring and preserving the private business arrangements established by the decree. Conversely, the public interest in modifying institutional consent decrees—which typically involve significant public interests—will ordinarily outweigh the interest of preserving the decree where sufficient reason for modification is shown.

■ Applying this test to the facts of the present appeal, the District Court did not abuse its discretion in modifying the consent decree. The court found that "[e]xpanding the classification limits set forth in the Agreed Modification to permit double-celling of qualified split-sentenced inmates, of certain felons and misdemeanants, and of certain pretrial and sentenced inmates would not present an increase in risk of harm to the inmates and is consistent with the intent and purpose of the settlement agreement in this case." It also found that "[d]ouble-celling felons and misdemeanants does not increase the risk of harm to inmates if the proper assessments of their potential for violence are made." The court's fact findings were not clearly erroneous and as such will not be disturbed. *Rabidue v. Osceola Ref. Co.,* 805 F.2d 611, 616 (6th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). Because the class of those eligible for double-celling was unnecessarily restrictive, inmates were being released in order to stay within the population caps even though there were many cells available which could accommodate two inmates. The District Court reasonably concluded that the modification of the consent decree would further the goal of the original order and would not disrupt the essence of the parties' agreement. The public interest in having criminals complete their sentences by expanding the class eligible for double-celling could reasonably be found to outweigh the interest in preserving the sanctity of the decree. The District Court therefore properly modified the consent decree.

Accordingly, the judgment of the District Court is AFFIRMED.