**LITTLE ROCK SCHOOL DISTRICT, Plaintiff,**

v.

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT NO. 1, et al., Defendants,**

**Mrs. Lorene Joshua, et al., Katherine W. Knight, et al., Intervenors.**

**No. LR–C–82–866.**

United States District Court, E.D. Arkansas, W.D.

June 21, 1991.

Christopher Heller, Little Rock, Ark., for plaintiff LRSD.

Samuel M. Jones, III, Little Rock, Ark., for defendants PCSSD, et al.

Stephen W. Jones, Little Rock, Ark., for NLRSD.

John W. Walker, Little Rock, Ark., for intervenors Joshua, et al.

Richard Roachell, Little Rock, Ark., for intervenors Knight, et al.

## MEMORANDUM AND ORDER

SUSAN WEBBER WRIGHT, District Judge.

The parties have submitted to the Court a legion of proposed modifications to the settlement plans approved by the court of appeals in *Little Rock School District v. Pulaski County Special School District No. 1,* 921 F.2d 1371 (8th Cir.1990). Taken as a whole, the parties have fashioned a set of plans remarkably different from those approved by the Eighth Circuit. While some modifications of the settlement plans are both necessary and acceptable, neither the court of appeals nor this Court has authorized the parties, in effect, to write new plans. Careful study of the documents submitted on May 1, 1991 (hereinafter referred to as the May submissions) reveals that the changes exceed the bounds of permissible alterations outlined by the court of appeals.

The Eighth Circuit, after examining *all four* settlement plans, concluded that they were "reasonable, good-faith efforts to solve seemingly intractable problems ... [embodying] significant relief for the plaintiff class," *id.* at 1388, which provided a "constitutionally accepted level of relief," *id.* at 1390. Accordingly, on December 12, 1990, the court of appeals directed this Court to approve the settlement plans "as submitted by the parties," *id.* at 1376, and to monitor the parties' compliance with such plans to ensure that they are "scrupulously adhered to," *id.* at 1386.

The order approving the settlement plans included two provisions giving the parties

flexibility to incorporate portions of the Tri–District Plan and to facilitate the transition from the Tri–District Plan to the settlement plans. First, the Eighth Circuit recognized that "[t]he parties may conclude that the Tri–District Plan contains useful ideas. They are free, by agreement, to *modify* the settlement plans *by incorporating in them one or more provisions of the Tri–District Plan,* subject, of course, to the approval of the District Court." *Id.* at 1393 n. 15 (emphasis added). Second, the court permitted the parties to make necessary transitional "adjustments" in certain details of the settlement plans.

> The parties have been proceeding during this school year under the terms of our interim order filed on July 2, 1990. It may be necessary, *in order to make a smooth transition,* for the *details* of the settlement plans to be *adjusted* to produce an appropriate fit between their future application and existing circumstances. The parties should be able to agree as to whether such *adjustments* are necessary, and, if so, what they should be. Absent such agreement, the District Court is authorized to take such actions as may be just.

*Id.* at 1394 (emphasis added.)

Neither exception gives the parties latitude to make such extensive modifications to the settlement plans as those now before the Court. In addition to considerable alterations in both language and style, the parties now propose substantive changes in the settlement plans with little or no basis in the Tri–District Plan or justification as necessary transitional adjustments. Even though Pulaski County Special School District's (PCSSD) "reorganized" or "amended" plan purports to address "the major programs and practices of the Tri–District Plan which the parties have agreed to implement or continue" (p. 703),[1] the Court is unable to find *any* proposed modification

incorporating substantive provisions of the Tri–District Plan which did not appear in the original PCSSD plan.[2]

The parties have agreed to settle this case. They assured the court of appeals that they would abide by the terms of the settlement plans. Indeed, the court noted that "[t]he parties have made solemn undertakings," 921 F.2d at 1390, and directed this Court to take appropriate action "if the parties do not live up to their commitments," *id.* at 1386. Now the parties are retreating from a number of their promises.

A few examples will illustrate. The PCSSD's May submission: (1) substantially reduces the library media program (pp. 751–56, 830–34); (2) deletes major portions of the section on special education, especially concerning handicapped students (pp. 766–76); (3) reduces the original provisions regarding the analysis of factors affecting student discipline, particularly the problem of black students being disciplined disproportionately (pp. 806–08); (4) cuts the number of secondary curriculum coordinators by more than half (p. 739); (5) does away with PATWICK (Parents and Teachers Working in Cooperation for Kids), a parent involvement program begun in 1986 (pp. 824–25); (6) removes from consideration several programs to improve student achievement, including peer tutoring, homework hotlines, and plans for a parent education program (p. 748); and (7) deletes the provision requiring school counselors to establish at each secondary school a committee composed of students, parents, and teachers to address the problems of teenage pregnancy, drug addiction, and divorce/stepfamilies (p. 762).[3]

Incredibly, the PCSSD May submission proposes to delete virtually the entire 144–page Appendix to the original PCSSD settlement plan. This same Appendix was

---

1. Page numbers cited are from the May submissions.

2. For example, on page 787 of the PCSSD's May submission, a section is entitled "Programs Retained from the Tri–District Plan"; however, this section is taken virtually word-for-word from the settlement plan.

3. Instead, the PCSSD proposes "a secondary school committee" as an information and referral source on such problems, but we are left in the dark as to either the makeup of the committee or whether there will be one or several.

submitted to the court of appeals as a part of the parties negotiated settlement plan, the implementation of which the Eighth Circuit directed this Court to monitor in scrupulous detail. Some documents in the Appendix have been deleted without any explanation; others were swept aside with notations of "style change," "outdated," "redundant," or "omitted by agreement" (although there is no clue as to *who* agreed to any of the omissions). To the contrary, the Appendix contains information that is not a question of style, currentness, or redundancy, but rather a matter of important substance including: (1) implementation charts which specify goals, objectives, activities, time sequences, and persons responsible for numerous programs and operations; (2) the statement of the Board of Education's policy on student assignment which includes the "freeze" limitation on school enrollment for desegregation purposes; (3) an agreement for tri-district collaboration among the LRSD, PCSSD, and NLRSD based on their "understanding of the absolute importance of a collaborative effort in desegregation and desegregative efforts among the three districts" (9 App. 2079)[4] as detailed in thirteen pages of Implementation Guidelines covering such areas as student disciplinary and attendance policies, mutually supportive and equitable personnel recruitment and placement procedures, establishing a county wide School Improvement Council to address ongoing desegregation and improvement efforts, joint programs in guidance/counseling, an alternative school, enhanced testing programs and student preparation, and a Collaborative Budget Summary for support of the cooperative efforts, including the alternative school; (4) a summary of the Language Enrichment Activity Program (LEAP) for primary students; and (5) task sequences for the district's desegregative monitoring of special education.

Also deleted as a whole is a "PCSSD Supplement to Intradistrict Student Assignment Plan," an agreement among the PCSSD, LRSD, and Joshua Intervenors regarding interdistrict schools; however, certain features of this agreement have been reincorporated with changes in the May 1991 submission. Absent, too, are the subsections of this Supplement which detail specialty programs at several schools, proposed student reassignments, and special recruitment projects.

It is especially troubling that among the PCSSD deletions is the parties' agreement to abide by fourteen "guiding principles" which apply to the "process of permanent plan development" (9 App. 2171). The Eighth Circuit referenced and quoted from this document, titled "Agreement and Recommendation", in its recent December 12, 1990 opinion:

> 13. With the exception of Bayou Meto, the goal of the plan shall be to achieve a minimum black student enrollment of 20% by the end of six years in all PCSSD schools....
>
> 14. With the exception of Bayou Meto, it is hoped that the dynamics of the plan will result, by the end of the implementation period, in all PCSSD schools being within the range of plus or minus 25% of the then prevailing district-wide average of blacks by organizational level. However, at a minimum, at the end of the implementation period, no PCSSD school shall have a black enrollment which exceeds the then prevailing black ratio, by organizational level, in the Little Rock School District. If the ratios have not been achieved at the end of six years, the 1989 plan shall be completely reevaluated by all parties and the Court. Upon that event the Joshua Intervenors may ap[p]ly for implementation of a mandatory reassignment plan in order to achieve a racially balanced school system.

921 F.2d at 1378–79 (quoting 9 App. 2178–79 ("Agreement and Recommendation" of PCSSD and Joshua intervenors, May 1988, incorporated by reference in PCSSD's Plan, 19 App. 5274)). It is inconceivable that the parties would propose to delete a document which the Eighth Circuit has used as a basis for its approval of the settlement plan. As the court of appeals noted:

**4.** This citation is to the Appellants' Joint Appendix filed with the Eighth Circuit.

Thus, the Plan did not ask the District Court to let PCSSD permanently off the hook so far as racial ratios were concerned. Far from it. It included specific goals for attendance percentages, and provided that if the minimum prescribed goal was not met, all bets would be off. The Plan would be open to complete re-evaluation, and the Joshua intervenors would be free, notwithstanding their agreement with the Plan as submitted in 1989, to apply to the District Court for mandatory student reassignments to achieve a racial balance.

*Id.* at 1379.

The May 1991 submission of the Little Rock School District (LRSD) incorporates some provisions from the Tri–District Plan (see, *e.g.*, pp. 191–92). However, it also contains several changes which are contrary to the permissible "adjustments" outlined by the Eighth Circuit. For example, there are adverse changes in the incentive schools section, even though the court of appeals' recent order admonished:

> It is important for the settlement plans to be scrupulously adhered to—*and here we have in mind especially the kinds of programs that the plan contemplates for the Incentive Schools*—and it will be the job of the District Court to see that this monitoring is done effectively, and that appropriate action is taken if the parties do not live up to their commitments.

921 F.2d at 1386 (emphasis added.)

Changes for the incentive schools in the May submission include: (1) reducing the number of instructional aides from one per classroom to two aides for every three classrooms (p. 297); (2) eliminating school themes (pp. 127, 266); (3) delaying the development of parent home study guides and computer managed instructional technology for tracking student progress (p. 267); (4) deleting the commitment to provide a full time nurse at each building (p. 304); and (5) eliminating staff positions for program specialist and specialist for alternative classrooms (p. 323).

There are numerous changes in other sections of the LRSD May submission. For example, the submission eliminates science and social studies as core areas emphasized in academic support (remediation) programs at the secondary level (p. 75), and narrows the scope of such programs to "developing the competencies needed for functioning effectively in the regular English and math classrooms" rather than all regular classes as originally specified (p. 80). The Citywide Early Childhood Education Program has been rewritten completely and timelines for implementation of this program have been omitted (pp. 16–24). The four-year-old program originally scheduled for *all* schools by 1993–94 has been reduced to only eleven schools, with the promise that a "long-range implementation plan will be developed for additional four-year-old classes" (pp. 14–15).

This Court addressed requirements for construction projects at eight LRSD schools by Order dated March 21, 1991:

> The parties will present to the Court at the end of March 1991 a document delineating proposed "adjustments" between the settlement and Tri–District plans. In view of the construction already underway (without the prior knowledge or approval of the Court), the Court expects the March [now May] transition document to reflect that much careful thought has been given to the proposed changes in school capacity. The document must demonstrate clearly the link between any proposed changes in school capacity and (1) the identified needs which justify the capacity expansion, (2) the specific, anticipated use of the expanded space, and (3) how attendance zones will be redrawn to assure that "all LRSD students can determine which schools they will attend for the entire course of their education in LRSD."

> . . . . .

> The proposed construction at Forest Heights Junior High School will be approved contingent upon (1) inclusion in the March [now May] 1991 transition document of the specific information requested above as it relates to expansion at Forest Heights. . . .

*Little Rock School District v. Pulaski County Special School District No. 1*, No. LR–C–82–866, at 2–3 (E.D.Ark. Mar. 21, 1991) (citation omitted). Instead of providing the above information in its May 1991 submission, the LRSD merely revised a paragraph in the original settlement plan by deleting references to a new junior high school and inserting the following changes (italicized):

> The capacities of junior high schools will be reviewed in light of needed programs. Such capacities will then be revised as necessary. If, upon review, it is determined that inadequate junior high capacity exists in the District to meet programmatic needs of the District and/or intradistrict and M–to–M needs as they develop, *the District will involve the parties in planning for additional junior high capacity.* Curriculum *supervisors*, associate/*assistant* superintendents, *and others as needed* will be involved in the planning process.

LRSD May submission at 204. The LRSD offers no explanation for this failure to comply with the Court's order to include specific information.

Proposed revisions in the Interdistrict Plan would reduce from *six* to *four* the number of Interdistrict Schools planned for the near future. Yet the December 12, 1990 order of the court of appeals specifically noted the parties' commitment to *six* interdistrict schools:

> Again, we state those provisions of the Plan with particular relevance to the issues presently on appeal.... The Interdistrict Plan provided ... for six more interdistrict schools. These schools were to emphasize, in the manner of magnet schools so called, certain educational themes. They would be attended primarily by black students from LRSD and white students from PCSSD. They would thus have a desegregative effect, reducing the number of black students in LRSD and the number of white students in PCSSD. Three of these schools were to be in LRSD, and three in PCSSD. Three of them would be in existing buildings (Baker and Harris in PCSSD, and Romine in LRSD) and three would be newly constructed (Crystal Hill in PCSSD and Stephens and King in LRSD; 200 additional classroom spaces would be constructed at Baker Elementary).

921 F.2d at 1379–80.

Although there is now a provision added to the May submission for a "new [interdistrict] school to be constructed in 1993–94 at a site mutually agreed to by all the parties" (p. 385, see also p. 395), the parties not only propose eliminating Baker and Harris as interdistrict schools, they also propose postponing the scheduled opening dates of the four interdistrict schools retained from the settlement plans (pp. 385, 394–95). For example, the parties now propose delaying completion of the Stephens Interdistrict School until 1994–95 (p. 385). Except for proposing a delay, the May submission includes no specific plans for the new Stephens Interdistrict School, notwithstanding this Court's March 1991 order linking approval of construction at Forest Heights Junior High with that of the Stephens school:

> The proposed construction at Forest Heights Junior High School will be approved contingent upon ... (2) the selection of a definite site for the location of the Stephens interdistrict school. Construction at Forest Heights may not begin until the Court receives notice from the LRSD that a site for Stephens has been selected and approved by all parties, along with definite plans, rationale, and dates for site acquisition and anticipated dates for the school's construction, completion, and opening.

> If, after a reasonable time, the parties cannot agree on the location of Stephens, the LRSD then may petition the Court for relief, which may include the Court selecting the site for the Stephens school.

*Little Rock School District v. Pulaski County Special School District No. 1*, No. LR–C–82–866, at 3–4 (E.D.Ark. Mar. 21, 1991). Is this Court to infer that LRSD intends to delay construction at Forest Heights as well as of the Stephens Interdistrict School?

The interdistrict school proposed in the settlement plans for Chenal Valley now appears tenuous. The May submission has changed the original language regarding the Chenal Valley interdistrict school which was proposed in the settlement plan and specifically relied upon by the court of appeals: "In addition to these six interdistrict schools, the Interdistrict Plan provided that future interdistrict schools 'in or near Chenal Valley and the Scipio A. Jones site' may be considered." 921 F.2d at 1380 n. 7 (quoting 8 App. 1721). The "commitment" to an interdistrict school in Chenal Valley now reads: "*Any* school constructed in Chenal Valley will also be an Interdistrict School" (p. 385, emphasis added). The deadline for determining the specific timetable for construction of an interdistrict school in Chenal Valley has been deleted (p. 400).

Other changes in the Interdistrict Plan include: (1) deleting the requirement that the parties utilize the services of an experienced consultant in developing and implementing incentive school programs (p. 387); (2) adding an agreement by the PCSSD to increase the capacity of the new elementary school in the virtually all white Crystal Hill area to 800 (p. 398–99); and (3) dropping plans to consider a Montessori school theme for the new King Elementary School (p. 400).

Curiously missing from the North Little Rock School District's May submission is any reference to its "Revised Desegregation Plan" dated December 1, 1989. The NLRSD filed this plan with the district court on January 11, 1990 as an exhibit to the NLRSD's Second Quarter Status Report for 1989–90 [DOC # 1296], and with the Eighth Circuit as part of the Appellants' Joint Appendix (14 App. 3592–3816). The December 1989 plan purports to incorporate the NLRSD's approved plan and all amendments thereto into a single document, as well as the stipulated compensatory education programs which were rejected by the district court but approved on

appeal (p. v; 14 App. 3598).[5] The December plan also proposes "some additional program commitments relevant to desegregation" (p. vi; 14 App. 3599). It is these additional commitments, reviewed and approved by the court of appeals, that are redacted. In fact, the May submission states that "[t]he final modification of the NLR plan occurred as a result of the 'Stipulated Compensatory Education Programs to be Implemented by the NLRSD with Settlement Monies' . . . filed on October 25, 1989" (p. 904). It is true that the December 1989 plan, though filed, was never approved by the district court. Nonetheless, if the NLRSD did not intend to keep these commitments, it should not have made those representations to the Eighth Circuit.

Significant provisions contained in the December 1989 plan but omitted from the NLRSD May submission include: (1) desegregation monitoring guidelines (p. 91; 14 App. 3690); (2) references to elimination of basic classes over a two year period beginning in 1990–91 (p. 41; 14 App. 3640); (3) a section describing Chapter 1 Computer Labs (p. 35; 14 App. 3634); (4) the school-based IMPACT teams to deal with substance abuse issues (p. 50; 14 App. 3649); (5) the multicultural curriculum review committee and the implementation of its curriculum guide for multicultural education (p. 43; 14 App. 3642); (6) an explanation of NLRSD's overall approach and specific strategies for eliminating achievement disparity (pp. 47–49; 14 App. 3646–48); and (7) plans for alternative education through the Joseph Pfeifer Alternative Classroom Experience, the Tri–District Alternative Learning Center, and the alternative classroom for elementary students at the North Little Rock Boys' Club (pp. 52–57; 14 App. 3651–56; *cf.* May submission, p. 963). Also, much of the language in the section entitled "Community Relations" has been rewritten, deleting commitments for a PTA at each NLRSD school, methods for communicating with the non-reading public, recognition of employees for achievement, a process for obtaining input from all em-

---

5. The first citation is the page number in the December 1989 plan filed with the district court; the second, the corresponding page in the Appellants' Joint Appendix filed with the Eighth Circuit.

ployees, and a quarterly community newsletter, as well as other informational publications (pp. 92–94; 14 App. 3691–93; *cf.* May submission, pp. 949–50).

Aside from these differences in reconciling the December 1989 plan and the May 1991 submission, the NLRSD has kept proposed substantive changes in its settlement plans at a minimum. Much of the language in its Student Assignment Plan has been deleted or rewritten in the May submission due to the NLR Secondary Reorganization (p. 913), and the scope of voluntary transfers between the NLRSD and the PCSSD has been broadened (p. 914). The original settlement plan language regarding the Cantalician Study has been included word for word but erroneously is identified as having been paraphrased with the added proviso that "[i]f there are any disputes regarding this underline [sic] language, the original language will control" (p. 934). The May submission also proposes that the Joshua Intervenors appoint a representative to an intradistrict review committee for monitoring special education programs but deletes the settlement language which delineates the requirements for other members of this committee (p. 938).

■ Nearly all the foregoing revisions in the four plans fall outside the narrow realm of modifications and adjustments deemed permissible by the Eighth Circuit. Thus, this Court cannot approve them. This is not to say that all the proposed changes are without merit, or that they all would negatively affect desegregation in the three districts. It is simply a matter of compliance with the language of the Eighth Circuit's order.

The parties will be permitted to submit proposed modifications and adjustments to the settlement plans under the following conditions:

1. Substantive modifications to the plans shall be only for the purpose of incorporating useful features of the Tri–District Plan.

2. The parties may make necessary adjustments in the details of the settlement plans to facilitate a smooth transition to operations under those plans and to produce an appropriate fit between the future application of the plans and existing circumstances. The burden will be on the parties to show that such adjustments are necessary, transitional, and reasonably related to the existing provisions in the settlement plans.

3. The above modifications and adjustments shall be made by agreement of the parties. However, absent such agreement, a party may petition the Court for relief. All proposed modifications and adjustments shall be effective only upon approval by the Court.

4. The parties shall present their agreed modifications and adjustments to the Court in a single document with every proposed addition, deletion, or other change noted, explained, and cross-referenced to the original settlement plans. Similarly, any proposed modifications or adjustments not agreed to by the parties must be clearly identified as such and included in the submission, noted as a change, explained, and cross-referenced.

5. Counsel for all parties shall sign the single document (which is to contain all proposed changes whether they are agreed upon or noted as disputed) and submit it to the Court. Changes for the 1991–92 school year must be submitted within thirty days of the date of this order. No extensions will be granted.

6. Changes in the original settlement plan language as to tense, voice, grammatical structure, punctuation, capitalization, vocabulary, style, format, dates, timelines, appendices, text order, and the like will be acceptable only when absolutely necessary for describing transitional provisions or when incorporating features of the Tri–District Plan.

7. The LRSD must comply with the March 21, 1991 order of this Court which directed that proposed revisions to the settlement plans include specific information about changes in school capacity, the needs which justify the capacity expansion, anticipated use of the expanded space, the redrawing of attendance zones for schools affected by increased building capacity,

and the requirements regarding the site for Stephens Interdistrict School.

Until this Court approves modifications and adjustments allowed by the court of appeals, the Court expects the parties to comply with the original provisions of the settlement plans in their operations for the 1991–92 school year. Future modifications to the settlement plans shall be made only as follows.

The PCSSD settlement plan contains a detailed process for the presentation and review of amendments to the plan (pp. 855–56; 9 App. 2049–50).[6] Proposed amendments may arise in multiple ways, including by agreement or consultation with the other parties. Any proposal is first submitted to the PCSSD Office of Desegregation (Office) for initial review and analysis. The Office will make a recommendation to the Superintendent who will in turn make the final recommendation to the Board. If the Board approves, the matter will be submitted to the Court, and formally submitted to other parties to the litigation. If the Court approves, the plan shall be amended. Note that *by the plan's own terms*, agreement of all parties is *not* required for amendment.

The other three settlement plans do not contain a specified process for future amendment. It is reasonable, however, to imply an identical amendment provision in the LRSD and NLRSD plans, since "[a]ny desegregation plan should contain sufficient flexibility to deal with changing conditions and meet unforseen developments.... [t]herefore ... the plan must include a mechanism for the presentation and review of amendments" (pp. 855; 9 App. 2049). The omission of this feature from the other plans perhaps was an oversight. For the parties to agree to language in the PCSSD plan stressing the need for an amendment mechanism in "any desegregation plan," and then purposely intend not to include such a provision in the other plans, would be utterly inconsonant.

This amendment process is part of the PCSSD plan which was approved by the court of appeals. Therefore, in view of the absence of any provision to the contrary, the Court will infer such terms in the LRSD and NLRSD settlement plans to the extent they are applicable to each district. This means that future modifications to the individual district plans may be made if approved by the Court without the necessity of agreement to such changes by all the parties. Of course, the very nature of the interdistrict plan requires that any subsequent modifications thereof be agreed to by all parties.

This is not to say that the three districts should shun consultation with the other parties when considering amendments to their plans. The Court will scrutinize closely proposed modifications that are opposed by one of the parties. However, this process, as designed by the parties themselves, wisely places on each individual school district the responsibility for modification of its own settlement plan, subject to Court approval, rather than involving all of the parties in constant negotiations and posturing whenever a change or refinement in one of the plans is needed.

▉ Settlements involving class actions require judicial approval to ensure that they are not unfair to class members or negotiated by inadequate class representatives, *see, e.g., Little Rock School District,* 921 F.2d at 1383; *Ficalora v. Lockheed California Co.,* 751 F.2d 995, 996 (9th Cir. 1985) (per curiam); therefore, the Court must approve any subsequent modifications of the settlement plans, whether such modifications are made to the LRSD, NLRSD, or PCSSD plans by the process of amendment outlined above, or to the interdistrict plan by agreement of the parties.

▉ Alternatively, the Court may modify the settlement plans upon application by any party who can clearly show a "grievous wrong evoked by new and unforseen conditions." *United States v. Swift & Co.,* 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76

---

**6.** The first citation is the page number in the PCSSD May submission; the second, the corresponding page in the Appellants' Joint Appendix filed with the Eighth Circuit. The amendment section in the May submission was substantially unchanged from its original form.

L.Ed. 999 (1932). As explained by the Eighth Circuit,

> [c]onsent decrees partake of the nature of contracts, as well as judicial action, and parties seeking to change them bear an extremely heavy burden. They are not, however, immutable in any absolute sense, and extraordinary circumstances can arise that would enable the District Court, within its discretion, to consider modifications.

*Little Rock School District*, 921 F.2d at 1387.

In sum, this Court will uphold the settlement plans as written by the parties and approved by the Eighth Circuit. The parties, by agreement, may initially incorporate such features of the Tri–District Plan that they find useful, and may adjust certain details of the settlement plans to facilitate a smooth transition to operating under the provisions of those plans. Future modifications to the individual district plans will be made by the amendment process set forth in the PCSSD plan. The interdistrict plan may be modified only upon agreement of the parties. All proposed modifications are subject to Court approval. In appropriate circumstances, any party may apply for modification of any plan, but such modification shall be made at the Court's discretion.

The proposed revisions to the settlement plans as submitted by the parties on May 1, 1991 are not approved. The Court directs the parties to file any proposed changes to the settlement plans pursuant to the terms of this Order within thirty days.

IT IS SO ORDERED.