Appeal of **LITTLE ROCK SCHOOL DISTRICT, Pulaski County Special School District No. 1, North Little Rock School District, and Mrs. Lorene Joshua.**

Nos. 91–2640, 91–2648, 91–2655 and 91–2683.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 4, 1991.

Decided Nov. 14, 1991.

Christopher Heller, M. Samuel Jones III, Stephen W. Jones, John W. Walker, Little Rock, Ark., argued, Wiley Branton, Little Rock, Ark. and Julius Chambers and Norman Chachkin, New York City, on the brief, for appellants.

There were no appellees in this case.

Before ARNOLD, Circuit Judge, HEANEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

ARNOLD, Circuit Judge.

On December 12, 1990, we approved a comprehensive settlement of the Pulaski County, Arkansas, school-desegregation case. *Little Rock School District v. Pulaski County Special School District*, 921 F.2d 1371 (8th Cir.1990). We recognized, however, that the approved plans, which we shall call the 1989 plan or plans, would need some modification because of the passage of time. We remanded the case to the District Court with directions to adopt the plans with any necessary transitional changes. We also stated that the parties are "free, by agreement, to modify the settlement plans by incorporating in them one or more provisions of the Tri–District Plan, subject, of course, to the approval of the District Court." 921 F.2d at 1393 n. 15.

On remand the three school districts involved, Little Rock School District (LRSD), Pulaski County Special School District

(PCSSD), and North Little Rock School District (NLRSD), and the Joshua Intervenors, representing the plaintiff class, met to discuss what modifications of the 1989 plan would be necessary or appropriate. After extensive negotiations, the parties agreed to a long list of modifications, and submitted them to the District Court for approval. The parties refer to their settlement as thus modified as the "May 1991 Plan," and we shall adopt the same terminology.

The District Court rejected the proposed modifications. In its view, they went beyond any authority conferred by this Court's 1990 opinion. That opinion, as the District Court read it, authorized only two sorts of changes: the incorporation of provisions of the Tri–District Plan, and an adjustment of details necessary to make a smooth transition between the 1990–91 school year, which had been governed by an interim order of this Court dated July 2, 1990, see 907 F.2d 76, and the 1991–92 school year. The District Court considered all other changes out of bounds under this Court's mandate, whether or not these changes had been agreed to by all parties concerned.

The Court directed the parties to submit a new modified plan in compliance with its view of this Court's mandate. "Substantive modifications to the plans," it said, "shall be only for the purpose of incorporating useful features of the Tri–District Plan." *Little Rock School District v. Pulaski County Special School District No. 1,* 769 F.Supp. 1483, 1489 (E.D.Ark., 1991). The Court explained: "Nearly all the [proposed] ... revisions ... fall outside the narrow realm of modifications and adjustments deemed permissible by the Eighth Circuit. Thus, this Court cannot approve them. This is not to say that all the proposed changes are without merit, or that they all would negatively affect desegregation in the three districts. It is simply a matter of compliance with the language of the Eighth Circuit's order." *Id.* at 1489.

The parties then moved for reconsideration. They emphasized that all the changes for which approval was being sought had

been agreed to by all parties concerned. They took the position that the District Court should approve any modifications thus agreed to, provided that they met the standards set out in this Court's opinion for judicial review of the original, 1989, settlement. So long as the agreed changes did not render the plan plainly unconstitutional on its face, were not manifestly unworkable, and were not unfair to class members, see 921 F.2d at 1383, they should be approved, the parties said. The Court denied the motion for reconsideration and summarized its position as follows:

> The Court sees the Eighth Circuit's approval of the plans as akin to establishing a benchmark; we now have [a] distinct reference point, a sure guide for ending this dispute and getting the parties out of court. Some revisions to the settlement plans will be needed initially to update the plans and to effect a smooth transition from the Tri–District Plan; thereafter, other modifications may be necessary in response to changing conditions and unforeseen developments. However, such changes should be minimal and occur at the margins, rather than at the core of the plans.

*Little Rock School District v. Pulaski County Special School District No. 1,* 769 F.Supp. 1491 (E.D.Ark., 1991).

From these orders disapproving their proposed modifications, the parties have now appealed. All four parties involved, LRSD, PCSSD, NLRSD, and the Joshua Intervenors, take the position that the District Court has confined them within limits that are too narrow, and that all of their proposed changes, being constitutional, workable, and fair, should have been approved. They ask us to reverse the orders of the District Court and remand the case with directions to approve all of the parties' modifications.

I.

■ There is much in the District Court's opinions with which we agree. The 1989 settlement which we approved last year should indeed be a benchmark for the future path of this case. The parties are

not authorized to modify it at will. Further, we agree, for the most part, that any changes approved should be concerned only with the details of the plan, affecting it only at the margin, so to speak. We wish to dispel, in particular, any notion that an asserted lack of funds on the part of any of the three school districts would justify a reduction in their commitment to desegregation represented in the 1989 plan, even if such a reduction were agreed to by the Joshua Intervenors, an eventuality which, in any event, seems to us most unlikely. The desegregation obligations undertaken in the 1989 plan are solemn and binding commitments. The essence and core of that plan should not be disturbed.

■ On the other hand, we think the District Court was too strict with itself. We did not intend, for example, to limit changes in detail to matters that are merely transitional, or to the selection of certain provisions from the Tri–District Plan. (We accept responsibility for any lack of clarity in our December 1990 opinion on this point.) If a question is truly one only of detail, not affecting the major substantive commitments to desegregation, the District Court has the authority to consider it. Some such changes, for example, as the District Court noted, may have merit, either because they advance desegregation, or for other reasons. Even changes that go beyond the level of detail, moreover, could be approved, but only if the parties affirmatively establish good reasons (not including the lack of funds) for them.

It may be helpful for us to state those elements of the 1989 plan that we consider crucial, and with respect to which no retreat should be approved. They are as follows: (1) double funding for students attending the incentive (virtually all-black) schools; (2) operation of the agreed number of magnet schools according to the agreed timetable; (3) operation of the agreed number of interdistrict schools according to the agreed timetable; (4) intradistrict desegregation of PCSSD according

to the agreed timetable; (5) the agreed effort to eliminate achievement disparity between the races; (6) the agreed elements of early-childhood education, at least in the incentive schools; and (7) appropriate involvement of parents.

For purposes of illustration, we will discuss a number of the proposed modifications, indicating which of them seem to us to concern mere details, and which of them, on the other hand, would require substantive justification. Items we consider to involve details include deciding whether Russian will be taught at Parkview; failing to include the 144–page appendix in the revised PCSSD May 1991 Plan; changing the plan's language with respect to a possible interdistrict school in Chenal Valley; changing the process to decide whether King Elementary School will be a Montessori school; and eliminating Explorer memberships for students at incentive schools.[1] In contrast, changes we consider to be significant, requiring justification, include reducing the number of instructional aides in the incentive schools from one per classroom to two aides for every three classrooms; eliminating incentive-school themes; and eliminating a full-time nurse at each school. Again, we emphasize that we do not mean to imply that these changes are not permissible. Rather, changes of this kind may be approved if the District Court finds they are justified.

■ One other kind of change proposed by the parties deserves our attention: deleting requirements of the plan because the parties agree the requirements have been met. An example of this is LRSD's obligation under the 1989 plan to hire two parent recruiters to conduct recruitment activities for the incentive schools. In their "Stipulation Regarding Little Rock School District and Interdistrict Plan Modifications," filed with the District Court on July 25, 1991, the parties stated that they deleted the requirement to hire the recruiters because the recruiters were hired in 1989. J.A. 105. We agree with the District

---

1. Students at the incentive schools, which are all on the elementary level, are too young to be

Explorer Scouts. Joint Addendum (J.A.) 102.

Court's statements on this topic: "Present performance does not excuse future obligation. What if the district *stops* doing what it promised? Without such commitments remaining readily identifiable in the plan, the Court cannot monitor [the] district's compliance with the plan." *Little Rock School District v. Pulaski County Special School District No. 1,* 769 F.Supp. 1491, 1500 (E.D.Ark., 1991) (emphasis in original). Perhaps LRSD will no longer need parent recruiters at some point in the future. Until that time, however, the district's obligation to hire and maintain the recruiters should remain in the plan.

■ The appellants urge that we not remand the case to the District Court for further proceedings. They ask us simply to order approval of their modifications as a whole, or, in the alternative, to go through each of the modifications and indicate specifically which of them should be approved, and which disapproved. They suggest that a remand would not result in any additional factual proof. Justification for each of the proposed changes, they say, can be found in the stipulations they filed with the District Court. We can read those stipulations and apply them just as well as a trial court, the parties assert.

We believe the better course, though it will involve some delay before a final plan is in place, is to remand to the District Court with directions to review the proposed modifications under the standards set out in this opinion. On the most general level, the standard is, as the parties assert, the same one we originally applied in approving the 1989 plan: The parties' agreement should be upheld if it is constitutional, workable, and fair to class members. On the other hand, the application of this test is affected by the new procedural context in which we now find the case. The 1989 settlement is a benchmark. Although changes can be made, the District Court and we must take into account the potential for confusion, even chaos, that constant change creates. The parties and the public deserve a period of stability. Changes in details, or at the margin, will not seriously interfere with this goal.

Changes of greater significance, however, may well do so, and that fact must be taken fully into account when such changes are proposed and considered.

We recognize that the language of this opinion is somewhat general. It leaves a considerable degree of latitude to the District Court. That Court must determine in the first instance, using the criteria we have suggested, what changes are mere details and what changes are outside that category. It must also determine, in its own best judgment, what changes should be approved, notwithstanding their going beyond the level of detail, because they would advance desegregation or for other sound reasons. The District Court should proceed with that discretion and flexibility that characterizes courts of equity. Its decisions, whatever they are, are of course subject to review on appeal, but the review will be on an abuse-of-discretion basis, and we will give a healthy measure of deference to the reasoned choices made by the District Court.

## II.

We turn to a few other matters requiring our attention. After the District Court rejected the May 1991 Plan, it ordered the parties to submit new modifications which complied with its interpretation of our December 1990 opinion. On July 22, 1991, the parties submitted their new proposed modifications. In view of our resolution of this appeal, the debate over the extent to which this so-called July submission conforms to the District Court's orders of June 21 and July 15, 1991, is now moot.

■ Although the District Court disapproved the parties' proposed modifications, it entered a partial stay of its orders on August 22, 1991, pending the outcome of this appeal. The effect of the stay was to require the parties to abide by the 1989 plan, except with respect to those specific items mentioned in the order. We have no quarrel with this order, and it can, subject to any modification that may commend itself to the District Court, remain in effect pending the District Court's decision concerning the proposed modifications to the

plan under the guidelines we have set forth in this opinion.

It troubles us, however, that the parties seem to be misinterpreting the partial stay. At oral argument, the attorney for PCSSD stated that the District Court's order of August 22, 1991, prevents the parties from taking other desegregative actions on subjects that are not covered in the 1989 plan. An example given at oral argument was a proposed program to encourage vendors to hire minority employees and deal with minority suppliers. We see nothing in the District Court's August 22 order prohibiting efforts by the school districts above and beyond those required by the 1989 plans. The District Court disapproved the May 1991 Plan, in part, because it viewed the plan as a reduction in the parties' commitment to desegregating public schools in Pulaski County. Nothing in its orders prevents the districts, without necessarily coming to the Court for approval, from voluntarily increasing their desegregation efforts, as long as these efforts do not conflict with the districts' pre-existing obligations under the 1989 plan, as it may be modified from time to time. The District Court's July 15 opinion makes this clear: "The plans are a floor, not a ceiling." *Little Rock School District v. Pulaski County Special School District No. 1*, 769 F.Supp. 1491, 1495 (E.D.Ark., opinion filed July 15, 1991). We reiterate, however, that these increased efforts may not supplant the districts' obligations under any court-approved plan.

■ Finally, we think it prudent to mention the standard to be used by the District Court for reviewing proposed modifications to the plan (if any are submitted in the future) to which all the parties have not agreed. As appellants have correctly noted, disputed modifications are governed by a stricter standard than agreed-to modifications. In *Board of Education of Oklahoma City Public Schools v. Dowell*, — U.S. ——, 111 S.Ct. 630, 636, 112 L.Ed.2d 715 (1991), the Supreme Court rejected, as too burdensome, the requirement that a party requesting a dissolution or modification of a school-desegregation plan show a

"grievous wrong evoked by new and unforeseen conditions," under *United States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932). In rejecting the *Swift* standard, however, the Court did not indicate what showing would be necessary for a party to demonstrate the need for modification. We find the Sixth Circuit case of *Heath v. De Courcy*, 888 F.2d 1105 (6th Cir.1989), instructive on this issue:

> To modify [a] consent decree[ ], the court need only identify a defect or deficiency in its original decree which impedes achieving its goal, either because experience has proven it less effective [or] disadvantageous, or because circumstances and conditions have changed which warrant fine-tuning the decree. A modification will be upheld if it furthers the original purpose of the decree in a more efficient way, without upsetting the basic agreement between the parties.

*Id.* at 1110. Our review of the District Court's decisions concerning this kind of modification will also be subject to an abuse-of-discretion standard.

\* \* \* \* \* \*

The orders appealed from are vacated, and the cause remanded to the District Court for further proceedings consistent with this opinion. We direct that our mandate issue forthwith. We ask the District Court, to the extent practicable, to give this matter priority on its docket. Each party shall bear its own costs on this appeal.

It is so ordered.

WOLLMAN, Circuit Judge, concurring.

Although I concur in the court's judgment vacating the orders appealed from and remanding the case to the District Court for further proceedings, I write separately to voice my concern that our holding may be too restrictive with respect to the changes that the parties should be allowed to implement. By way of example, it seems to me that the parties have already offered sufficient justification for their intention to reduce the number of instructional aides in the incentive schools, to eliminate certain incentive-school themes, and to eliminate a full-time nurse at each

school. These are matters, among others, that I consider to be mere details, the implementation of which should be left to the discretion of the parties.

The recurring theme expressed during oral argument was the knowledge and experience that the parties have gained during the past several years about those aspects of the desegregation plan that have been successful and those which have not. For example, counsel for Pulaski County Special School District stated (and I paraphrase) "What we have learned over the past two years is that brand new schools and a strong basic curriculum is what parents want." Counsel for North Little Rock School District explained that North Little Rock had abandoned precision teaching because it was found not to be effective. Likewise, counsel for the Joshua Intervenors stated (and again I paraphrase) "We have seen that certain things don't work. We know what won't work, for example, theme schools."

Of course these are arguments that can (and no doubt will) be made to the District Court on remand. I mention them here only to illustrate the deference that we, and the District Court, should pay to those who are charged with the responsibility of educating the children within the several school districts.

Some might reply by saying that such deference represents a naive, too-trusting attitude, given the recalcitrance—nay, outright obduracy—of the parties in years past. Perhaps so. On the other hand, we should remember that this is not 1954 or 1957—or even 1985, for that matter—and the time has come to cease excoriating the leaders of the present for the sins of their forebears and to vouchsafe them some credit for the efforts they have made to comply with the several decrees that have been entered in this long-standing case. The court's opinion today takes this latter course, and I am pleased to join in it, differing only in the degree of detailed supervision that the District Court should be required to exercise over the parties' revised plan.

If I thought that my somewhat more relaxed standard of supervision would lead to a cessation of the efforts that have heretofore been made to remedy the effects of legally-enforced segregation or a wholesale jettisoning of the plan that we approved in our opinion of last December, I would not espouse it. As it is, however, I would give the parties the opportunity of demonstrating that the changes they have proposed do not affect, in the court's words, "the major substantive commitments to desegregation." I view the continuing presence of the Joshua Intervenors as a powerful force to insure that the several school districts adhere to their commitments to desegregation. My views have not carried the day, of course, and so we will never know whether the greater latitude I would have allowed the parties would have resulted in a commitment fulfilled or a promise rung hollow.