USCA1 Opinion

 

 March 16, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-2158 IN RE DONALD PEARSON, ET AL., Petitioners. _________________________ ON PETITION FOR WRIT OF MANDAMUS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] ___________________ _________________________ Before Breyer, Chief Judge, ___________ Aldrich, Senior Circuit Judge, ____________________ and Selya, Circuit Judge. _____________ _________________________ David R. Geiger, with whom Joseph D. Halpern, Michele A. ________________ _________________ __________ Whitham, Sarah Burgess Reed, and Foley, Hoag & Eliot were on _______ ___________________ ____________________ brief, for petitioners. William L. Pardee, Assistant Attorney General, with whom __________________ Scott Harshbarger, Attorney General, was on brief, for __________________ respondents. _________________________ March 16, 1993 _________________________ SELYA, Circuit Judge. Petitioners seek a writ of SELYA, Circuit Judge. ______________ mandamus which, if granted, will halt the district court's nascent efforts to probe the continuing need for, or the possible modification of, consent decrees affecting the operation of a state institution, the Massachusetts Treatment Center for Sexually Dangerous Persons (the Treatment Center). Because petitioners cannot satisfy the strict prerequisites for extraordinary relief by way of mandamus, we dismiss the petition. I. BACKGROUND I. BACKGROUND The United States District Court for the District of Massachusetts has been involved with the Treatment Center for more than two decades. In 1974, the district court entered a consent decree and supplemental consent decree in the case of King v. Greenblatt.1 The decrees placed the Treatment Center ____ __________ under the primary authority of the Massachusetts Department of Mental Health and obligated the department to operate the facility in accordance with certain standards. The district court specifically retained the right to amend the King decrees ____ in the future. Although the original plaintiff, King, soon left the Treatment Center, other residents took up the cudgels. Over time, inmates brought a variety of suits to enforce the decrees. ____________________ 1King, an individual confined at the Treatment Center, brought suit, inter alia, to reform certain institutional _____ ____ policies and practices. Relevant portions of the original and supplemental consent decrees are set forth as appendices in two earlier decisions of this court. See Pearson v. Fair, 935 F.2d ___ _______ ____ 401, 416-19 (1st Cir. 1991); Langton v. Johnston, 928 F.2d 1206, _______ ________ 1227-28 (1st Cir. 1991). 2 The stream of litigation occasionally overflowed the district court. See, e.g., Pearson v. Fair, 935 F.2d 401 (1st Cir. 1991) ___ ____ _______ ____ (Pearson II); Langton v. Johnston, 928 F.2d 1206 (1st Cir. 1991); __________ _______ ________ Pearson v. Fair, 808 F.2d 163 (1st Cir. 1986) (per curiam) _______ ____ (Pearson I). The petitioners, all of whom were originally __________ inmates of the Treatment Center and at least one of whom still resides there, have been at the eye of the storm. In the early 1980s, they brought an action to enforce the King decrees, see ____ ___ Pearson I, 808 F.2d at 165, and subsequently survived the __________ Commonwealth's challenge to their alleged lack of standing. See ___ Pearson II, 935 F.2d at 404 n.4. Moreover, in 1988, the ___________ petitioners intervened in the King case and fended off the ____ Commonwealth's motion to vacate the judgment therein. The continuing saga of the federal courts' involvement with the Treatment Center took a new turn in 1992 when the district court, acting on its own initiative and without providing advance notice, appointed a special master to analyze "the impact of existing and pending legislation on the consent decrees" and on "the operation of the Treatment Center"; to study all unresolved claims alleging violations of the consent decrees; and to advise the court concerning the Treatment Center's operation and the continued viability of the King decrees.2 ____ The petitioners learned of this initiative after the fact. They did not take kindly to it. When the district court ____________________ 2The district court's order is reproduced in the appendix. We omit therefrom the master's curriculum vitae. 3 refused to alter its stance, the petitioners headed for the court of appeals. In this forum, they ask for mandamus, asserting that the lower court lacked jurisdiction to appoint a master because King was dead, juridically if not literally, and because neither ____ side was currently seeking, or had recently sought, modification of the King decrees. Petitioners also assert a host of other ____ challenges to the entry of the order and to its scope. II. THE USES OF MANDAMUS II. THE USES OF MANDAMUS Congress has authorized the federal courts to issue prerogative writs which are "necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. 1651(a) (1988). As the Court recently reminded us, a traditional use of prerogative writs has been to confine inferior courts to the lawful exercise of their prescribed jurisdiction or compel them to exercise their authority when duty demands. See Mallard v. United States Dist. ___ _______ ___________________ Court, 490 U.S. 296, 308 (1989) (quoting Roche v. Evaporated Milk _____ _____ _______________ Ass'n, 319 U.S. 21, 26 (1943)). This use is customarily _____ accomplished by means of mandamus or prohibition (terms which we employ interchangeably in this opinion). Such writs afford a mechanism for immediate correction of acts or omissions amounting to an "usurpation of power." De Beers Consolid. Mines, Ltd. v. ______________________________ United States, 325 U.S. 212, 217 (1945). _____________ Prerogative writs are drastic remedies which have the potential, if overexercised, "to spawn piecemeal litigation and disrupt the orderly processes of the justice system." In re _____ Recticel Foam Corp., 859 F.2d 1000, 1005 (1st Cir. 1988). Thus, ____________________ 4 mandamus must be used sparingly and only in extraordinary situations. See Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. ___ ___________________ ______________ 33, 34 (1980) (per curiam); Will v. United States, 389 U.S. 90, ____ _____________ 107 (1967); In re Insurers Syndicate, 864 F.2d 208, 211 (1st Cir. ________________________ 1988); see also Boreri v. Fiat S.p.A., 763 F.2d 17, 26 (1st Cir. ___ ____ ______ ___________ 1985) (warning that the writ's "currency is not profligately to be spent"). To ensure that the writ's use is appropriately rationed, we have, for the most part,3 insisted that a writ- seeker limn "some special risk of irreparable harm," together with "clear entitlement to the relief requested." Recticel, 859 ________ F.2d at 1005; accord In re Bushkin Assocs., Inc., 864 F.2d 241, ______ ____________________________ 243 (1st Cir. 1989); In re Justices of the Supreme Court of __________________________________________ Puerto Rico, 695 F.2d 17, 20 (1st Cir. 1982).4 On the former ____________ prong, the petitioner "must ordinarily demonstrate that something ____________________ 3We qualify our statement because there are infrequent cases in which the usual requirements may be relaxed. See, e.g., In re ___ ____ _____ Justices of the Supreme Court of Puerto Rico, 695 F.2d 17, 25 _______________________________________________ (1st Cir. 1982); see also In re Ellsberg, 446 F.2d 954, 956-57 ___ ____ ______________ (1st Cir. 1971). Such cases invariably involve issues of great public import, justifying resort to advisory mandamus. See ___ generally Recticel, 859 F.2d at 1005 n.4 (describing types of _________ ________ cases in which advisory mandamus may be suitable). The petitioners do not suggest, and we cannot conclude, that the matters implicated here fall into that category. 4In one sense, the "clear entitlement" language is a misnomer. It seems more accurate to say that a petitioner's entitlement to the writ depends on a two-tiered showing that the district court's order (a) presents a special risk of significant irreparable harm and (b) is palpably erroneous. See La Buy v. ___ _______ Howes Leather Co., 352 U.S. 249, 256 (1957). We use the phrase __________________ "palpably erroneous" to signify a situation in which the claimed vice is plain as a matter of law and is also substantially prejudicial as a matter of fact. 5 about the order, or its circumstances, would make an end-of-case appeal ineffectual or leave legitimate interests unduly at risk." Recticel, 859 F.2d at 1005-06; accord United States v. Sorren, ________ ______ _____________ ______ 605 F.2d 1211, 1215 (1st Cir. 1979). On the latter prong, the petitioner must usually establish a "clear and indisputable" right to the requested relief, Bankers Life & Cas. Co. v. __________________________ Holland, 346 U.S. 379, 384 (1953) (quoting United States v. _______ ______________ Duell, 172 U.S. 576, 582 (1899)), or, in other words, that the _____ challenged order is palpably erroneous. See supra note 4. This ___ _____ dichotomous standard is sufficiently stringent that "[i]nterlocutory procedural orders . . . rarely will satisfy th[e] precondition for mandamus relief." Recticel, 859 F.2d at ________ 1006. Nonetheless, a district court's appointment of a master may be so far afield, and the potential for mischief so great in a particular situation, that immediate relief by way of mandamus is warranted. See, e.g., La Buy v. Howes Leather Co., 352 U.S. ___ ____ ______ _________________ 249, 256 (1957); National Org. for the Reform of Marijuana Laws ________________________________________________ (NORML) v. Mullen, 828 F.2d 536, 541-42 (9th Cir. 1987). _______ ______ III. DISCUSSION III. DISCUSSION Because petitioners' variegated challenges reflect neither a special risk of significant harm nor palpable error attributable to the judge's interlocutory order, mandamus is not justified. For ease in presentation, we discuss these points in reverse order. A. Presence of Palpable Error. A. Presence of Palpable Error. __________________________ The petitioners have failed to demonstrate that the 6 district court lapsed into palpable error or, stated another way, that they are clearly entitled to the relief requested. To explain why this is so, we deal extensively with petitioners' main "case or controversy" approach and then consider their other asseverations in a group. 1. The Case or Controversy Requirement. Petitioners 1. The Case or Controversy Requirement. ____________________________________ strive to convince us that, at the time the district court appointed the master, no justiciable case or controversy existed; and that, therefore, the court's order plainly outstripped its jurisdiction. Petitioners' exhortation has two strands. We find neither strand persuasive. a. a. __ The first strand might be subtitled: "On the Death of King." Petitioners suggest that King was a "dead case" which the ____ ____ district court improperly resurrected. Whatever this morbid metaphor may mean, it misses the mark. The entry of a consent decree does not "kill" a case or terminate a district court's jurisdiction. Rather, when, as now, an injunction entered pursuant to a consent decree has ongoing effects, the issuing court retains authority to enforce it. See, e.g., System Fed'n ___ ____ ____________ No. 91, Etc. v. Wright, 364 U.S. 642, 647 (1961) (explaining that ____________ ______ structural injunctions "often require[] continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained th[e] equitable relief"). By the same token, a court retains authority to modify or interpret such decrees in light of changed 7 circumstances. See, e.g., id. at 646-47; United States v. Swift ___ ____ ___ _____________ _____ & Co., 286 U.S. 106, 114-15 (1932). This authority is part of a ______ court's inherent powers and exists regardless of whether a particular consent decree expressly so provides.5 See Swift, ___ _____ 286 U.S. at 114; see also Fed. R. Civ. P. 60(b)(5)-(6). ___ ____ Since a district court has power to modify a consent decree, it is impossible to say that the court below acted "in clear excess" of its power, In re Justices, 695 F.2d at 21, in _______________ taking the much more tentative step of appointing a master to investigate the possibility of modifying the decree. See Chicago ___ _______ Housing Auth. v. Austin, 511 F.2d 82, 83 (7th Cir. 1975) (raising _____________ ______ no question as to jurisdiction in such a context). In other words, nothing about the lower court's raising of a moistened finger to test the winds implicated jurisdictional concerns. To be sure, petitioners place great emphasis on the fact that the original plaintiff, King himself, no longer resides at the Treatment Center. Because of this fact, and because the King case was never certified as a class action, petitioners ____ categorize the case as defunct. We believe this taxonomy is too simplistic. In the first place, the King case is not dead; it ____ is, at worst, moribund. Even that description may be overly pessimistic; petitioners themselves became parties in King five ____ years ago (when the district court granted their motion to intervene), and their status as parties has not been altered by ____________________ 5Here, of course, the district judge explicitly reserved the power to amend. See Pearson I, 808 F.2d at 165. ___ _________ 8 any subsequent order. In the second place, the King decrees have ____ ongoing effects and other inmates continue to bring actions seeking their enforcement. The district court obviously gave weight to this reality, noting the "many cases filed by patients at the Treatment Center." Moreover, in opting to appoint a master, the court made specific reference to contemporaneous allegations about institutional failings gathered by forty-eight Treatment Center residents desirous of improving their lot.6 All things considered, we find the tales of King's demise to be ____ greatly exaggerated. b. b. __ The second, more substantial, salvo of petitioners' jurisdictional assault bombards the spontaneous character of the district court's action. This fusillade also goes awry. We believe that a district court's jurisdiction to modify a consent decree necessarily implies that the court does not act in clear excess of its authority when it appoints a master, sua sponte, to ___ ______ look into possible decree-modifying changes. We explain briefly. A consent decree is not simply a contract entered into between private parties seeking to effectuate parochial concerns. See Firefighters v. Cleveland, 478 U.S. 501, 519 (1986); United ___ ____________ _________ ______ ____________________ 6Although these grievances were contained in a letter to the judge, rather than in a lawsuit, petitioners apparently concede that the district court possessed the authority to docket the letter as a pro se complaint. We agree. See Haines v. Kerner, ___ __ ___ ______ ______ 404 U.S. 519, 520 (1972) (per curiam); Soto v. United States ____ _____________ Postal Serv., 905 F.2d 537, 539 (1st Cir. 1990), cert. denied, _____________ _____ ______ 111 S. Ct. 679 (1991); McCall-Bey v. Franzen, 777 F.2d 1178, 1190 __________ _______ (7th Cir. 1985); Gale v. United States Dep't of Justice, 628 F.2d ____ ______________________________ 224, 226-27 (D.C. Cir. 1980). 9 States v. ITT Continental Baking Co., 420 U.S. 223, 236 n.10 ______ ____________________________ (1975). The court stands behind the decree, ready to interpret and enforce its provisions. This ongoing supervisory responsibility carries with it a certain correlative discretion. See Wright, 364 U.S. at 648. Unlike petitioners, we do not ___ ______ envision a vast jurisdictional limbo in which courts forced to exercise their equity powers remain powerless to question whether what they have been doing "has been turned through changing circumstances into an instrument of wrong." Swift, 286 U.S. at _____ 115. Put bluntly, "parties cannot, by giving each other consideration, purchase from a court of equity a continuing injunction." Wright, 364 U.S. at 651. ______ This is especially so when, as in the instant case, a consent decree calls for judicial supervision of a government-run facility. In so ramified a setting, a court's decrees implicate the citizenry's interests as well as those of the parties and bear directly on the salubrious operation of public institutions. See Heath v. De Courcy, 888 F.2d 1105, 1109 (6th Cir. 1989) ___ _____ _________ (acknowledging that such decrees "reach beyond the parties involved directly in the suit"); New York State Ass'n for ____________________________ Retarded Children, Inc. v. Carey, 706 F.2d 956, 969 (2d Cir.) _______________________ _____ (deeming it "well recognized that in institutional reform litigation . . . judicially-imposed remedies must be open to . . . accommodation of a wider constellation of interests than is represented in the adversarial setting of the courtroom"), cert. _____ denied, 464 U.S. 915 (1983). In institutional reform litigation, ______ 10 injunctions should not operate inviolate in perpetuity. See Rufo ___ ____ v. Inmates of the Suffolk County Jail, 112 S. Ct. 748, 762-65 ____________________________________ (1992); Board of Educ. v. Dowell, 111 S. Ct. 630, 637 (1991); see ______________ ______ ___ also Milk Wagon Drivers Union v. Meadowmoor Dairies, Inc., 312 ____ _________________________ ________________________ U.S. 287, 298-99 (1941) (explaining that continuation of an injunction is justified only by continuation of the circumstances which induced it). This must mean that, notwithstanding the parties' silence or inertia, the district court is not doomed to some Sisyphean fate, bound forever to enforce and interpret a preexisting decree without occasionally pausing to question whether changing circumstances have rendered the decree unnecessary, outmoded, or even harmful to the public interest. Against this backdrop, the fact that the court acted sua sponte is not fatal. After all, Fed. R. Civ. P. 53, which ___ ______ governs the appointment of masters, does not necessitate a motion as a condition precedent to judicial action. Taking our lead from the rule itself, we hold that a district court is not jurisdictionally disabled from acting on its own initiative in appointing a master to ascertain the need for alteration of its ongoing activities under a consent decree.7 Cf., e.g., INS v. ___ ____ ___ ____________________ 7In its present posture, this case does not require that we decide whether, or when, a district court may actually modify a consent decree sua sponte. See Hook v. Arizona Dep't of ___ ______ ___ ____ __________________ Corrections, 972 F.2d 1012, 1016 (9th Cir. 1992) (stating that no ___________ justiciable controversy exists where a court proceeds to revise a consent decree although neither party had moved for modification as required by Fed. R. Civ. P. 60(b)); Cook v. Birmingham News, ____ _______________ 618 F.2d 1149, 1152 (5th Cir. 1980) (similar). The court below has been circumspect, appointing a master only for limited investigatory and advisory purposes. Moreover, some parties to the litigation, most notably the defendants (who have agreed to 11 Chadha, 462 U.S. 919, 939-40 (1983) (explaining that, to be ______ constitutionally sufficient, a case or controversy need not stem exclusively from the adversarial positions of the litigants but may stem from the real-world effect of a court's actions); Gomes _____ v. Moran, 605 F.2d 27, 30 (1st Cir. 1979) (holding that a _____ district court did not exceed its powers when it refused to bind defendants to an "incorrect" decree despite their failure to request a modification). 2. Petitioners' Other Arguments. None of petitioners' 2. Petitioners' Other Arguments. ____________________________ remaining asseverations reveals error of a kind or to a degree required to justify a writ of mandamus. We deal in summary fashion with certain of these asseverations, dismissing the remainder without comment. a. a. __ Citing La Buy, 352 U.S. at 256, petitioners contend ______ that the order of reference constitutes an "abdication of the judicial function" to a non-Article III adjudicator. Here, however, unlike in La Buy or in Stauble v. Warrob, Inc., 977 F.2d ______ _______ ____________ 690 (1st Cir. 1992) (where the district court referred the entire case to a master for trial and adjudication), we think it far from clear that the master's mission, as presently constituted, ____________________ defray the master's fees for the time being and who have argued in this court against the issuance of a prerogative writ), are in agreement with the decision. Hence, we cannot say, on the record as it currently stands, that the district court's action is tantamount to a gratuitous modification of the consent decrees. Cf. Thompson v. Enomoto, 815 F.2d 1323, 1327 (9th Cir. 1987) ___ ________ _______ (ruling that the appointment of a special master is not an immediately appealable modification of a decree). 12 extends beyond permissible bounds. All that can be gleaned from the record before us is that the district court seeks information about the efficacy of an ongoing injunction. On its face, this seems a concinnous use of a master. See Stauble, 977 F.2d at 695 ___ _______ (discussing use of masters in connection with "remedy-related issues"); Chicago Housing Auth., 811 F.2d at 83-84 (refusing to _____________________ annul appointment of master in analogous circumstances); see ___ generally Vincent Nathan, The Use of Masters in Institutional _________ _____________________________________ Reform Litigation, 10 U. Tol. L. Rev. 419, 443-44 (1979). The _________________ order's scope, as the judge has delineated it, seems more akin to rendering "mere assistance" to the court, a permissible use of a master in many sets of circumstances, Stauble, 977 F.2d at 695, _______ than to abdicating adjudication of "fundamental question[s]," an impermissible use under any non-consensual set of circumstances. Id. ___ b. b. __ It is also argued that the court's designation of a master should be obliterated because Rule 53's core requirement the bedrock concept that references are reserved for the rare cases which present "some exceptional condition," Fed. R. Civ. P. 53(b) is completely unfulfilled. We disagree. The case at hand is intricate. Its circumstances are highly ramified. "Change" has been the watchword virtually ever since the consent decrees were entered. See, e.g., Langton, 928 ___ ____ _______ F.2d at 1209-10 & nn. 2-4 (describing certain changes in pertinent legislation over time); id. at 1212-13 (describing ___ 13 substantial changes in facilities and conditions of confinement); id. at 1213-16 (describing sweeping changes in treatment ___ modalities, programs, and the like). After two decades of intimate involvement with an especially complex public institution immersed in a state of continuing transition, the district court is still mired in litigation. We think that this scenario at least arguably reflects an exceptional condition. Hence, appointing a master to survey the legislative landscape, investigate the incidence and impact of changed circumstances, assess the current relevance of the decrees, and report the results to the court did not constitute palpable error as a matter of law. See, e.g., Chicago Housing Auth., 511 F.2d at 83- ___ ____ _____________________ 84 (refusing to annul district court's appointment of master in analogous circumstances); see also NORML, 828 F.2d at 543-45 ___ ____ _____ (explaining that complexity of litigation and of decree- compliance can justify appointment of a master in institutional reform litigation); Carey, 706 F.2d at 962-63 (similar). _____ c. c. __ Petitioners next complain that some of the matters referred to the master outstrip the four corners of the pleadings in King. The short answer to this plaint is that the order's ____ text does not bear it out. The slightly longer (but equally availing) answer is that the litigation's procedural posture is still fluid. The district court has before it a number of complaints dealing with various aspects of life at the Treatment Center. The order plainly indicates that the court proposes to 14 treat these cases as a group, at least for some (as yet undefined) purposes. Class certification remains a seemingly viable option. To the extent (if at all) that the court intends the order of reference to extend beyond the sequestration-type issues originally involved in King, we presume that the court ____ will travel an appropriate procedural path. See, e.g., Fed. R. ___ ____ Civ. P. 42(a) (discussing requirements for consolidation of actions); Fed. R. Civ. P. 23 (discussing prerequisites to class action and related matters); Fed. R. Civ. P. 24 (discussing requirements for intervention). We see no reason, therefore, given the confined office of a petition for mandamus, to stop the court in its tracks. d. d. __ Finally, petitioners claim that the district court failed to provide them with notice before appointing the master. They say, moreover, that this omission was exacerbated by an ex __ parte contact with respondents' counsel (a contact which, as a _____ byproduct, gave respondents advance warning of the judge's mindset). We do not believe that, under the totality of the circumstances, these facts warrant the issuance of a prerogative writ. While it seems logical for a trial court to consult with affected parties when contemplating the appointment of a master, the relevant procedural rule does not explicitly require prior notice, see Fed. R. Civ. P. 53, and we are unprepared to ___ state that advance consultation is absolutely essential in every 15 instance.8 Cf. Gary W. v. Louisiana, 601 F.2d 240, 244 (5th ___ ________ _________ Cir. 1979) (holding that a district court is not obliged to convene an evidentiary hearing anent whether to appoint a master). In this context, the purpose served by prior notice is threefold: it permits parties to (1) argue for or against the very idea of appointing a master, see, e.g., id. at 244-45, (2) ___ ____ ___ offer their views on the scope of any reference, see, e.g., ___ ____ Stauble, 977 F.2d at 694-96 (discussing scope considerations), _______ and (3) voice their preferences as to the master's identity. See, e.g., Morgan v. Kerrigan, 530 F.2d 401, 426-27 (1st Cir.), ___ ____ ______ ________ cert. denied, 426 U.S. 935 (1976). As we have already indicated, _____ ______ the reasons for appointing a master here are sensible and self- evident; the scope of the reference is unremarkable; and, lastly, the petitioners have neither expressed dissatisfaction with the individual selected as the master nor proffered any person whom they deem a more auspicious choice. In this unique situation, the incidence of any error is problematic; and, at any rate, the failure to provide notice seems benign. The ex parte contact does not stem the tide. It __ _____ appears that the judge, seeking to secure a commitment from the Commonwealth to absorb the master's costs, directed a clerk to ____________________ 8Nonetheless, we agree with the Ninth Circuit that, when an order of reference is entered sua sponte and without notice, a ___ ______ party who considers himself aggrieved thereby will be given considerable latitude as to the form and timeliness of an ensuing objection. See Burlington N. R.R. Co. v. Department of Revenue, ___ ______________________ _____________________ 934 F.2d 1064, 1070-71 (9th Cir. 1991). 16 call the attorney general's department.9 We agree with the petitioners that even this indirect inquiry should not have been conducted ex parte. In our adversary system, both the __ _____ administration of justice and the appearance of justice demand that courts refrain, by and large, from communicating with one party to the exclusion of the other(s). See, e.g., Meridian ___ ____ ________ Int'l Logistics, Inc. v. United States, 939 F.2d 740, 745 (9th ______________________ ______________ Cir. 1991) (stating the familiar rule that ex parte contacts by __ _____ the judge are not the norm); see also Model Code of Judicial ___ ____ Conduct, Canon 3B(7) (1990). Yet in this instance, the communication was wholly innocuous and petitioners have been unable to suggest how the judge's lapse was harmful. Because the court's impetuosity was in no way prejudicial, issuance of a prerogative writ would be tantamount to using a bazooka to slay a gnat. We decline to engage in such judicial overkill. See ___ Grieco v. Meachum, 533 F.2d 713, 719 (1st Cir.) (applying ______ _______ harmless-error analysis where alleged ex parte contact caused no __ _____ cognizable harm), cert. denied, 429 U.S. 858 (1976); United _____ ______ ______ States v. DeLeo, 422 F.2d 487, 499 (1st Cir.) (same), cert. ______ _____ _____ denied, 397 U.S. 1037 (1970); see also Raytheon Co. v. Automated ______ ___ ____ ____________ _________ Business Sys., Inc., 882 F.2d 6, 8 n.2 (1st Cir. 1989) (similar; ___________________ involving arbitrator's ex parte contact). __ _____ B. Special Risk of Irreparable Harm. B. Special Risk of Irreparable Harm. ________________________________ ____________________ 9Petitioners hint that the contact may have been more sinister, but they offer no support for their suspicions. We confine our evaluation, therefore, to the demonstrable facts of record. 17 Although it may be unnecessary to do so given petitioners' failure to show palpable error, we take this occasion to remark that petitioners likewise flunk the first part of the conventional mandamus test: they offer no satisfactory reason to believe that they will suffer irremediable harm if the writ does not issue. The order that petitioners challenge is merely preliminary. The only thing that it accomplishes is the appointment of a master to conduct certain studies, analyses, and investigations, compile a report, and thereafter make recommendations to the district judge. We decline petitioners' invitation to speculate, at this early date, about the purely hypothetical consequences that may or may not flow from these operose labors.10 Accord Chicago Housing Auth., 511 F.2d at 83 ______ _____________________ (rejecting similar challenge to similar order of reference). Leaving rank speculation aside, we can detect no other harm of a kind sufficient to ground mandamus relief. Certainly, any increased workload that may result from the master's involvement cannot turn the trick. We have consistently rejected the general burdensomeness of litigation, standing alone, as comprising a showing of harm sufficient to animate the power of ____________________ 10Petitioners' argument on this point is built entirely on the fragile foundation of conjecture and surmise. By way of illustration, they ruminate that, if the master makes findings concerning, say, the ability of Treatment Center personnel to function under the King decrees, the district court may give such ____ findings overly great deference. We prefer, however, to deal with the actuality of a developed situation rather than to anticipate that a federal district court will lapse into manifest error. Cf. W. Shakespeare, Macbeth, act I, sc. iii, ll. 133-34 ___ _______ (1605) (suggesting that, frequently, "present fears are less than horrible imaginings"). 18 mandamus.11 See, e.g., Recticel, 859 F.2d at 1006 n.5; In re ___ ____ ________ _____ Justices, 695 F.2d at 20. ________ IV. CONCLUSION IV. CONCLUSION We need go no further. Mandamus is an extraordinary remedy which "should be dispensed sparingly and only in pursuance of the most carefully written prescription, not made available over the counter, on casual demand. It is not a substitute for interlocutory appeal." Recticel, 859 F.2d at 1005. In its ________ present posture, this case does not warrant a dose of such strong medicine. The record here is, for the most part, malady-free; and any symptoms of arguable error, if later shown to have blossomed into full blown diseases, are amenable to a traditional cure on direct appeal. The petition for mandamus is denied and dismissed. The petition for mandamus is denied and dismissed. ______________________________________________________ Costs to respondents. Costs to respondents. ____________________ ____________________ 11Petitioners argue that the Court's opinion in Mallard _______ marked the dawning of a new era, calling our prior precedents into serious question. We disagree. Mallard did not deal with _______ the general burdensomeness of litigation at all; rather, the case involved an attorney compelled by a court to provide professional services against his will. See Mallard, 490 U.S. at 300. ___ _______ 19