USCA1 Opinion

 

 October 19, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 93-1914 IN RE: PETER FISHER & BALFOUR HOLDINGS, INC., Petitioner. ____________________ ERRATA SHEET This opinion of this court issued on October 12, 1993 is amended as follows: On page 4, not 2, fifteenth line, replace "Trainor" with Fisher". On page 6, eighth line of the first full paragraph, replace "circumstances which" with "circumstances,". October 12, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1914 IN RE: PETER FISHER & BALFOUR HOLDING, INC., Petitioner. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Torruella and Selya, Circuit Judges. ______________ ____________________ Evan Slavitt, Hinckley, Allen & Snyder, James B. Hicks, Kathy A. ____________ _________________________ ______________ _________ Jorrie and Andrews & Kurth L.L.P., on Petitions for Writ of Mandamus, ______ _______________________ for petitioners. ____________________ ____________________ Per Curiam. Petitioners Peter Fisher and Balfour ___________ Holding, Inc. [hereinafter collectively "Fisher"] seek a writ of mandamus directed to the United States District Court for the District of Massachusetts. This petition arises out of the district court's order declaring a mistrial after the parties to the action could not agree on the implications of the jury's answer to questions submitted to them pursuant to Fed.R.Civ.P. 49(a). The court found that in the circumstances of the case, "justice w[ould] best be served by retracing what, in the context of this litigation, ha[d] been a relatively small step." Background __________ The matter below has its source in two actions, both of which relate to a multi-party venture aimed at developing a human blood substitute. We summarize the facts briefly. Biopure Corporation manufactures Hemopure, a potential human blood substitute. In the late 1980s, William Trainor and Peter Fisher discussed entering into a joint venture agreement to provide financial assistance to Biopure in exchange for certain rights in Hemopure and other Biopure products. Fisher believed that an agreement had been entered into. However, in 1990, Biopure and a corporation controlled by Trainor, Bio-Vita, Ltd., entered into an agreement which did not include Fisher. Believing himself wrongfully excluded from the deal, Fisher brought an action against Biopure and Trainor [the "Fisher Action"]. After Trainor had invested over one million dollars in the Biopure project, Biopure rescinded the 1990 agreements on the grounds that Trainor had made misrepresentations and failed to meet certain obligations. Trainor then commenced his own action against Biopure [the "Bio-Vita Action"]. After more than two years of pretrial discovery and litigation, the Fisher Action was called to trial in November 1992. The court severed the first count of Fisher's amended complaint for immediate trial. This count alleged the existence, and Trainor's breach, of a binding joint venture agreement. The amended complaint also included counts of misrepresentation, interference with contract or advantageous relationship, and breach of fiduciary duty against Trainor, and several counts against Biopure. At the conclusion of the trial, and upon stipulation by the parties, the following questions were submitted to the jury pursuant to Fed.R.Civ.P. 49(a): 1. Did [Fisher] and [Trainor] enter into a binding oral contract providing that they would share 50/50 in the expense and gains involved in the Biopure project? If your answer to question one is "No" you need go no further. If your answer to question one is "Yes" go on to question[s] two and three. 2. Did [Fisher] breach the terms of [the] oral contract with [Trainor] by unjustifiably -4- failing to contribute [his] agreed upon share of the purchase price and other expenses incurred with respect to the Biopure project? 3. Did [Trainor] breach the terms of his oral contract with [Fisher] by unjustifiably denying [Fisher] an opportunity to participate on a 50/50 basis in the Biopure project? The jury answered "yes" to questions one and three, and "no" to question two.1 The court then recessed the jury with the intention of bringing them back later to resolve the issue of damages. The jury was never called back. Instead on July 12, 1993, the court declared a mistrial sua sponte. It based its decision ___ ______ on the fact that the parties "could not . . . agree to the implications of the jury's special verdict"2 and how to proceed ____________________ 1. Given these responses the jury was not required to address a fourth question which asked, if both Fisher and Trainor had breached the contract, who breached it first. 2. According to the court's memorandum: Trainor believes that Fisher's right to any relief- -i.e., a share in the judgment, if any, against Biopure--should be conditioned upon his payment of those expenses he would have been obligated to cover had he not been excluded as a joint venturer from the Biopure project. Fisher argues that he is excused from not putting up his share of the expenses, in light of Trainor's breach of the joint venture agreement. Fisher contends that the trial of the remaining counts in the Fisher Action, including the damages phase of the first count, should await the conclusion of the trial in the Bio-Vita Action. Trainor has expressed a willingness to proceed with the Bio-Vita Action, but not without the financial support of Fisher. Moreover, the parties disagree as to who should be controlling counsel with respect to the remaining -5- against Biopure in the Bio-Vita Action. "Given these extraordinary circumstances, [the court] decided not to hold either party to the other's interpretation of the verdict, or to [its] own." Petitioners contend that in failing to enter a verdict, pursuant to Fed.R.Civ.P. 58(2), in accord with the jury's special verdict, the court deprived them of their Seventh Amendment right to have judgment entered on the findings of the jury. They petition this court to issue a writ to the district court to enter judgment on the special verdict. Uses of Mandamus ________________ The All Writs Act, 28 U.S.C. 1651(a), empowers federal courts to issue writs of mandamus where "necessary or appropriate in aid of their respective jurisdictions." See In Re Pearson, ___ ______________ 990 F.2d 653, 656 (1st Cir. 1993). Traditionally such writs have been used "to confine inferior courts to the lawful exercise of their prescribed jurisdiction or compel them to exercise their authority when duty demands." Id.; see also Mallard v. United __ ___ ____ _______ ______ States Dist. Court for Southern Dist., 490 U.S. 296, 308 (1989) _____________________________________ (quoting Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26 (1943)). _____ _____________________ Being drastic measures, such writs "must be used sparing and only in extraordinary situations." Pearson, 990 F.2d at 653 (citing _______ cases). Otherwise they may undermine the policies surrounding ____________________ counts. -6- the congressional judgment that in general appellate review should be postponed until after final judgment. Allied Chemical _______________ Corp. v. Daiflon, Inc., 449 U.S. 33, 35 (1980). The decision on ____ ____________ whether to issue the writ is within the sound discretion of this court. Kerr v. United States District Court for Northern Dist., ____ _______________________________________________ 426 U.S. 394, 403 (1976). To ensure that the writ issue only in extraordinary circumstances, a petitioner is required to show "some special risk of irreparable harm" and a "clear entitlement to the relief requested" before a writ will be issued.3 In Re Recticel Foam ____________________ Corp., 859 F.2d 1000, 1005 (1st Cir. 1988); Pearson, 990 F.2d at ____ _______ 656. To satisfy the first requirement, a petitioner "must ordinarily demonstrate that something about the order, or its circumstances would make an end-of-case appeal ineffectual or leave legitimate interests unduly at risk." Id. (quoting __ Recticel, 859 F.2d at 1005-06). To satisfy the second, ________ petitioner must "establish a 'clear and indisputable' right to the requested relief or, in other words, that the challenged order is palpably erroneous." Id. (quoting Banker Life & Cas. __ ___________________ Co. v. Holland, 346 U.S. 379, 384 (1953) (quoting United States __ _______ _____________ v. Duell, 172 U.S. 576, 582 (1899))). _____ ____________________ 3. Cases of great public import where advisory mandamus is appropriate are excepted from these requirements. See In Re ___ _____ Recticel Foam Corp., 859 F.2d 1000, 1005 n.4 (1st Cir. 1988). __________________ This is not such a case. -7- Discussion __________ Petitioners assert that the court's failure to enter judgment in accord with the verdict in their favor deprived them of their rights under the Seventh Amendment. See Robles v. Exxon ___ ______ _____ Corp., 862 F.2d 1201, 1204 (5th Cir.), cert. denied, 490 U.S. ____ ____ ______ (1989) ("rule 58(2) and the seventh amendment command that judgment be entered on the verdict if the jury's answers are clear and consistent, subject, of course, to the usual motions under rules 50 and 59 for judgment notwithstanding the verdict or a new trial"); Toucet v. Maritime Overseas Corp., 991 F.2d 5, 8 ______ _______________________ (1st Cir. 1993) ("[w]hen a special verdict form results in apparently conflicting findings, a court has a duty under the Seventh Amendment to harmonize the answers if at all possible under a fair reading"). Furthermore, they assert that the court's declaration of a mistrial because the parties could not agree on the meaning of the verdict was a clear abuse of discretion. See Freeman v. Package Machinery, Co., 865 F.2d ___ _______ _______________________ 1331, 1333 (1st Cir. 1988) (judge may set aside jury verdict in civil case "only if, 'it is quite clear that the jury has reached a seriously erroneous result.'") (quoting Borras v. Sea-Land ______ ________ Services, Inc., 586 F.2d 881, 887 (1st Cir. 1978)). We do not _____________ address the merits of these contentions. As we have said above, to obtain mandamus relief a petitioner must show both a special risk of irreparable harm and ____ a clear entitlement to the relief he seeks. The Supreme Court has -8- indicated that "[a] trial court's ordering of a new trial rarely, if ever, will justify the issuance of a writ of mandamus" because it is likely to meet neither of these standards. Daiflon, 449 _______ U.S. at 36 First, since a litigant may seek review on direct appeal after final judgment, it cannot be said that the litigant is without other adequate means of relief. Id. Second, in a __ matter committed to the discretion of the trial court, it is unlikely that a litigant can demonstrate that his right to a particular result is clear and indisputable. Id. __ Even if this were a rare instance where a discretionary order by a trial court was a palpable abuse of discretion, petitioners still have an adequate remedy through a direct appeal after final judgment. See Navarro de Cosme v. Hospital Pavia, ___ ________________ ______________ 922 F.2d 926, 929 (1st Cir. 1991) ("[i]n a civil case, the remedy for a wrongfully declared mistrial is a second trial"). An erroneous declaration of a mistrial--if the declaration were in fact erroneous--is not an extraordinary circumstance. Hence, it does not merit the extraordinary remedy of mandamus relief. Nor does the fact that an appeal after final judgment will require more burdensome litigation, standing alone, justify our use of the power of mandamus. In Re Pearson, 990 F.2d at 661. _____________ Petitioners' request for a writ of mandamus is denied. ______ -9-