30 F.3d 126
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Todd G. DUCHARME, Plaintiff, Appellant,
v.
STATE of Rhode Island, ET AL., Defendants, Appellees.
 No. 93-1675
 United States Court of Appeals,
First Circuit.
 July 15, 1994.
 
 Appeal from the United States District Court for the District of Rhode Island [Hon. Francis J. Boyle, Senior U.S. District Judge ]
 Richard A. Sinapi with whom Sinapi Law Associates, Ltd. was on brief for appellant.
 Robin E. Feder, Assistant Attorney General, with whom Jeffrey B. Pine, Attorney General, was on brief for appellee.
 D.R.I.
 VACATED AND Remanded.
 Before Torruella, Cyr, and Stahl, Circuit Judges.
 Per Curiam.
 
 
 1
 In this interlocutory appeal, plaintiff- appellant Todd G. Ducharme ("Ducharme") contends that the district court erred in refusing to approve a consent judgment in settlement of Ducharme's civil rights action against the Rhode Island Division of State Police ("State Police") and Raymond A. Driscoll ("Driscoll"), a member of the State Police. Alternatively, Ducharme argues that the district court exceeded its authority in preventing the parties from entering the proposed consent decree on their own in the guise of an accepted offer of judgment pursuant to Federal Rule of Civil Procedure 68.
 
 I.
 BACKGROUND
 
 2
 On July 23, 1991, Ducharme was arrested by the State Police and charged with disorderly conduct. The charge was based on Ducharme's "abusive and belligerent" behavior toward a lifeguard who had requested Ducharme to remove his dog from Beach Pond, a state-run facility located in Exeter, Rhode Island. Clad only in "swim trunks," Ducharme was taken to a police building and strip searched. Specifically, defendant Driscoll commanded Ducharme to pull his swim trunks down to his knees, pull them up again, and then take them off so that Driscoll could search the pockets of the swim trunks. Driscoll then returned the swim trunks to Ducharme. According to State Police Superintendent Edmond S. Culhane, Jr., Ducharme was strip searched because it "is a routine procedure performed prior to placing an individual in a holding cell." We assume that Ducharme was then placed in a holding cell and that the disorderly conduct charge was resolved in some fashion.
 
 
 3
 Ducharme later filed this action in the United States District Court for the District of Rhode Island against the State Police and Driscoll.[1] The complaint alleges, inter alia, that the strip search constituted a violation of Ducharme's right to be free of unreasonable searches and seizures pursuant to the Fourth and Fourteenth Amendments to the Constitution, actionable under 42 U.S.C. Sec. 1983.
 
 
 4
 The complaint contains specific allegations concerning the unreasonableness of an automatic strip search policy. The complaint asserts that "it is well settled law that mandatory strip searches of arrestees charged with minor offenses, absent a reasonable suspicion that the arrestee is concealing weapons or contraband, such as that performed on [Ducharme], are unconstitutional." As additional evidence that an automatic strip search policy is unreasonable, the complaint reports that Rhode Island's Attorney General issued the following advice to the State Police in 1985:
 
 
 5
 The strip searching of persons detained for a short period of time for petty offenses should not be undertaken as a matter of routine procedure. The persons arrested for petty offenses should not be strip searched unless there is probable cause to believe that the person is concealing a weapon, drugs or evidence of a crime.
 
 
 6
 Ducharme also alleged that he might again fall victim to defendants' strip search policy. In particular, Ducharme alleged that he
 
 
 7
 resides in close proximity to the State of Rhode Island and has and continues to travel to and frequent places in the State of Rhode Island, as a result of which, he has [been] and continues to be exposed to the possibility of further invasion of his privacy by Defendants' policy of routinely strip searching arrestees for minor offenses, even in the absence of reasonable grounds to justify such a search.
 
 
 8
 In addition to requesting compensatory damages and attorney's fees, Ducharme also sought several forms of equitable relief: (1) a declaratory judgment that the automatic strip search policy of the State Police is unconstitutional; (2) a declaratory judgment that defendants' strip search of Ducharme was unconstitutional; and (3) an injunction preventing "[d]efendants from routinely strip searching [Ducharme] and all other persons arrested for minor offenses, absent reasonable suspicion that the arrestee is concealing a weapon or contraband."
 
 
 9
 Prior to the filing of an answer or the commencement of discovery, the parties began to negotiate a settlement. In February 1993, defendants made an offer of judgment pursuant to Rule 68[2] in the amount of $7500. Ducharme rejected the offer, explaining that he would not settle without a promise on the part of the defendants that they would no longer conduct unreasonable strip searches. Defendants responded by proposing, in addition to the money judgment, a letter to Ducharme reportedly stating that the policy of the State Police was now in conformity with the Attorney General's 1985 letter.[3] Once again, Ducharme refused.
 
 
 10
 Sometime thereafter the parties agreed on a proposed consent judgment, presented to the district court in April 1993, that would award Ducharme $7500 and bind the defendants with the following prospective provision:
 
 
 11
 Defendants shall not require as a matter of policy, nor shall they perform or cause to be performed strip searches of arrestees charged with misdemeanor or motor vehicle offenses, absent a reasonable suspicion that an arrestee is concealing a weapon or contraband, and shall otherwise conduct searches of arrestees within the limitations imposed by law.
 
 
 12
 In an unrecorded chambers conference, the district court apparently expressed its concern that the proposed decree would saddle the court with the task of supervising strip searches conducted by the State Police and on that basis refused to approve the judgment.
 
 
 13
 With this avenue closed, the parties developed another solution. Defendants orally agreed to amend their Rule 68 offer of judgment to include the terms of the proposed consent decree. Because Rhode Island law prohibits the State from settling a case without some form of court approval, see R.I. Gen. Laws Secs. 9-31-6 and 9-31-10 (1985), the parties gave the district judge an opportunity to object by notifying him of their intentions. In another unrecorded chambers conference, the district court evidently stated that it had the discretion to prevent the entry of a consent judgment even if the judgment was offered in the form of an otherwise nondiscretionary, self- executing Rule 68 offer and acceptance.
 
 
 14
 Finally, Ducharme filed a self-styled "Motion for Entry of Consent Judgment or in the Alternative Withdrawal of the Court's Interference With the Entry of Judgment by Way of a Rule 68 Offer and Acceptance Thereof." In the meantime, the parties amended the proposed consent judgment to specify that it could only be enforced by Ducharme. The district court conducted a hearing in June 1993, and, after considering the parties' arguments, denied Ducharme's motion from the bench. This appeal followed.
 
 II.
 JURISDICTION
 
 15
 Two important jurisdictional issues prevent us from addressing the merits of this appeal. First, Ducharme's claims for equitable relief do not fall within the subject matter jurisdiction of the federal courts. Second, to the extent that the prospective relief contained in the proposed consent judgment does not amount to an injunction, we have no appellate jurisdiction to consider the district court's interlocutory refusal to approve the proposed consent judgment. We discuss each jurisdictional issue in turn. A. Subject Matter Jurisdiction
 
 
 16
 Article III of the Constitution outlines the limits of our mandate; federal jurisdiction extends only to actual "Cases [or] Controversies." A federal court is powerless to answer hypothetical legal questions or legislate the resolution of future problems. Nor may a federal court intervene in an actual, ongoing controversy unless that controversy is reduced to a dispute among parties lawfully before the court. Accordingly, to stand before an Article III court, "[a] plaintiff must demonstrate a concrete injury caused by the defendant and remediable by the requested relief." American Postal Workers Union v. Frank, 968 F.2d 1373, 1378 (1st Cir. 1992).
 
 
 17
 The standing inquiry does not require an all-or- nothing analysis, but may call for some careful dissection. A suit may proceed in federal court even if some aspects of the plaintiff's requested relief are not likely to redress plaintiff's injuries. By the same token, however, a plaintiff who is otherwise properly in federal court may lack standing to pursue particular forms of relief. For example, while past injury generates standing to bring an action for damages, "past exposure to harm will not, in and of itself, confer standing upon a litigant to obtain equitable relief '[a]bsent a sufficient likelihood that [the litigant] will again be wronged in a similar way.' " Id. at 1376 (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)) (first brackets in original).
 
 
 18
 In this case, Ducharme clearly has standing to bring an action for damages against the defendants based on the July 23, 1991, strip search. It is equally obvious that Ducharme has no standing to request equitable relief. According to Ducharme, the routine strip search policy only applied to arrestees about to be placed in a holding cell. We simply cannot assume that Ducharme will violate the law in the future in a manner that would lead the State Police to arrest him and place him in a holding cell. And, as far as the record reveals, Ducharme is not in a State Police holding cell now, nor is he about to be placed in one. Finally, it appears that even in the event of a future arrest, Ducharme is unlikely to be subject to an unconstitutional search if, as the State represented at oral argument, the State Police strip search policy now conforms to the prospective provision of the proposed consent judgment. In the absence of a case or controversy with respect to Ducharme's claim for equitable relief, Lyons teaches that neither we nor the district court have jurisdiction to consider the merits of an equitable decree. Nor do we perceive any reason why the outcome of the jurisdictional inquiry should turn on whether the decree is the product of a pre-trial consent judgment or a post-trial order.
 
 
 19
 We hasten to add that the peculiarities of Rule 68 do not require a court to postpone ruling on the jurisdictional basis of the judgment the parties seek to enter. We acknowledge that Rule 68 requires the clerk of the district court to enter the parties' agreed-upon judgment in a ministerial fashion. See Fed. R. Civ. P. 68 (providing that "the clerk shall enter judgment" according to the terms of a timely accepted offer) (emphasis added); see generally Mallory v. Eyrich, 922 F.2d 1273, 1279 (6th Cir. 1991) ("Rule 68 ... leaves no discretion in the district court to do anything but enter judgment once an offer has been accepted.") Accordingly, a district court would not ordinarily have an opportunity to question the jurisdictional basis for an injunction embodied in the judgment until some later time, such as when one party seeks to enforce the injunction. But Rule 68 cannot require entry of a jurisdictionally defective judgment when the parties bring that judgment to the attention of the court.
 
 
 20
 Our conclusion as to the claim for equitable relief does not necessarily imply, however, that subject matter jurisdiction is now entirely absent. As we have mentioned, Ducharme still has standing to pursue his damages claim. Consequently, Ducharme still has the right to settle his damages claim by way of an agreement that does not ask the court to ignore its jurisdictional limitations. And, because neither the proposed consent judgment nor defendants' amended Rule 68 offer of judgment are on their terms "injunctions," the parties may simply have been seeking the district court's approval of a private contract containing a promise governing defendants' future behavior. With the issues thus narrowed, we now turn to the matter of appellate jurisdiction. B. Appellate Jurisdiction
 
 
 21
 Ducharme concedes that his appeal does not concern a "final decision[ ]" appealable under 28 U.S.C. 1291 (1988), but correctly observes that we are authorized by 28 U.S.C. Sec. 1292(a)(1) (1988) to hear an appeal from "[i]nterlocutory orders of the district courts ... refusing ... injunctions." The Supreme Court has held that an order refusing to approve a consent judgment containing injunctive relief has the "practical effect" of a denial of an injunction and is therefore appealable pursuant to Section 1292(a)(1). Carson v. American Brands, Inc., 450 U.S. 79, 83-84 (1981); Durrett v. Housing Auth. of Providence, 896 F.2d 600, 602 (1st Cir. 1990).
 
 
 22
 We have already concluded that neither we nor the district court have jurisdiction to consider the entry of an actual injunction. Thus, we need only determine whether we have jurisdiction to review a district court's refusal to approve a consent judgment containing non-injunctive yet forward-looking contractual relief. Plainly, we do not. Even if a simple contractual promise is nearly as valuable to a plaintiff as an actual injunction, such a promise is not the equivalent of an injunction and therefore a district court's refusal to approve such a promise does not constitute the denial of an "injunction" within the meaning of Section 1292(a)(1). Moreover, to the extent that the prospective provision of the settlement agreement in this case is amenable to interpretation as an "injunction," appellate jurisdiction would be meaningless because there is no jurisdiction in the district court for the issuance of such an injunction. In short, Ducharme has offered no valid basis for the exercise of appellate jurisdiction.[4]
 
 III.
 CONCLUSION
 
 23
 In light of the jurisdictional defect outlined above, the district court's order denying plaintiff's motion is vacated, and the cause is remanded for dismissal of plaintiff's claim for equitable relief for lack of jurisdiction. Any further action necessary to resolve plaintiff's damages claim shall proceed in harmony with this opinion.
 
 
 24
 So ordered.
 
 
 
 [1]
 The complaint names Driscoll in both his individual and official capacities
 
 
 [2]
 In pertinent part, Fed R. Civ. P. 68 provides:
 At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment.
 
 
 [3]
 This is our understanding of statements made by the State at oral argument before this court. The letter does not appear in the record on appeal
 
 
 [4]
 We decline Ducharme's invitation to treat his appeal as a petition for a writ of mandamus pursuant to 28 U.S.C. Sec. 1651 (1988). See generally In re Pearson, 990 F.2d 653, 656 (1st Cir. 1993) (describing supervisory mandamus powers of the courts of appeals); In re Ellsberg, 446 F.2d 954, 955-57 (1st Cir. 1971) (same). This is simply not an "extraordinary situation" that would justify our "sparing[ ]" use of mandamus. In re Pearson, 990 F.2d at 656 (citing, inter alia, Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980) (per curiam); Will v. United States, 389 U.S. 90, 107 (1967))