Eric L. v. HHS NH                    CV-91-376-M    09/30/03

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE

Eric L.; Kim C.; James K.; Julie W.;
Bruno J.; Jennifer B.; and Jeff D.;
Individually and on Behalf of
All Others Similarly Situated,
        Plaintiffs

        v.                                    Civil No. 91-376-M
                                              Opinion No. 2003 DNH 162

Commissioner of the New Hampshire
Department of Health and Human Services;
and Director of the New Hampshire
Division of Child & Youth Services,
        Defendants


                        O R D E R


        This case was originally filed in 1991.  In 1997, after
years of litigation, the plaintiffs and the New Hampshire
Department of Health and Human Services, Division for Children,
Youth and Families ("DCYF" or the "State"), entered into a
settlement agreement, which was incorporated into a consent
decree entered by the court.  The decree was to be in effect for
five (5) years, terminating on September 1, 2002.


        As often happens in this type of institutional reform
litigation, the settlement agreement's terms provided yet another
basis for dispute between the parties.  About a year before the
decree was to expire, plaintiffs asserted that a number of the

State's obligations under the decree had not been met, and insisted upon full compliance. The State apparently agreed to look into those complaints and address them, and both parties agreed, with the court's consent, to extend the decree's expiration date to January 31, 2003, in an effort to facilitate an amicable resolution of the issues raised.

With time running out, and unsatisfied with the progress being made, plaintiffs filed a motion to enforce the settlement agreement (decree) on January 16, 2003, alleging a broad range of substantive breaches of the decree's terms. Plaintiffs also claimed the State had failed to comply with its obligations in the area of data collection and record keeping. The parties attempted to work out their differences over the last few months, but were unsuccessful. Plaintiffs now seek to move forward on the motion to enforce, requesting a further order requiring compliance with the decree's terms (though defendants are already required to comply); an extension of the term of the decree to insure compliance; an order modifying the terms of the decree to require DCYF to assume what plaintiffs assert are new obligations mandated by evolving federal law and standards; monetary damages; and attorneys' fees related to seeking enforcement.

The State counters that the DCYF fully or substantially complied with the decree's terms in five (5) of the twelve substantive areas addressed; substantially or partially complied in the remaining seven (7) areas; and, where full compliance once was lacking, DCYF says it has implemented an aggressive plan which has now brought it into substantial compliance with the terms of the decree. The State also says that plaintiffs' assertions of breach are both exaggerated and based upon an interpretation of the decree's terms that improperly expands the scope of the underlying agreement and imposes obligations upon DCYF it never agreed to assume. DCYF also argues that even if it is determined that a breach occurred, the remedy would not properly include a further injunction or monetary sanctions, but an extension of the decree's expiration date, and perhaps orders aimed at obtaining specific performance. Indeed, DCYF offers to extend the term of the consent decree.

Having reviewed the matter, considered the issues raised in the opposing pleadings, and examined both the history of this particular litigation, as well as applicable legal precedent, I am persuaded that resolution of the motion to enforce may well turn on what appear to be disputed facts related to intricate and complex data collection, record keeping, and reporting requirements (and not just upon a disputed construction of the

3

decree's terms).  And, in that regard, plaintiffs make a plausible claim that discovery will be necessary in order to develop the facts relevant to their claims of breach.  It is also apparent that the parties have been wrestling with these issues for quite some time, with perhaps a declining spirit of cooperation in either achieving, or accepting substantial accomplishment of, the initial goals of the decree.

All of which is to say that this institutional reform litigation is complex.  It involves an aging consent decree that in effect calls for judicial supervision (in enforcing the decree) over a government-run program.  Given that context, it is clear both that the "[decree] should not operate inviolate in perpetuity," and "the district court is not doomed to some Sisyphean fate, bound forever to enforce and interpret a preexisting decree without occasionally pausing to question whether changing circumstances have rendered the decree unnecessary, outmoded, or even harmful to the public interest." In Re Pearson, 990 F.2d 653, 658 (1st cir. 1993).

This court possesses jurisdiction both to redetermine the necessity of continuing the decree, or, if appropriate, to modify it to account for changing needs and circumstances and/or amendments to the underlying federal law.  Id.  And, the

4

pleadings certainly suggest that a fresh look and reexamination of the current operations addressed by the decree is warranted.

Toward that end, the court is also authorized to appoint a master to look into possible decree-modifying changes. Id. That course seems particularly appropriate here as the plaintiffs raise intricate issues of administrative compliance that appear to involve detailed record keeping and data collection that, in turn, will require extensive review and analysis of reams of documents and years of historical data. Moreover, DCYF says that in the end it all involves much ado about very little, particularly given its recent implementation of an aggressive plan to bring it into full compliance. If DCYF is correct, it may well be that the current circumstances no longer call for continuing equitable mandates embodied in an extended consent decree.

Although the current procedural rule does not require advance consultation with the affected parties, such consultation is certainly the better practice. See Fed. R. Civ. P. 53 (amended, effective December 1, 2003). Accordingly, the court hereby gives notice to the parties of its intent to appoint David A. Garfunkel, Esq., Gallagher, Callahan & Gartrell, P.A., 214 N. Main Street, Concord, New Hampshire, 03301, to serve as a master

5

in this case.  The court proposes to refer this case to the master, for the purposes of having the master: survey the compliance landscape and make findings of fact, and recommendations, with regard to both noncompliance and effective remedies; investigate the effect of changed circumstances (and governing law) and assess the relevance of the decree's requirements to the current administrative situation and report the results; determine and recommend whether under currently prevailing circumstances the decree ought to be vacated, modified, and/or extended; make findings and a recommendation as to whether fees and costs should be assessed relative to the enforcement effort initiated by plaintiffs; and make a recommendation as to an appropriate allocation of fees and costs associated with the master's work.

## Conclusion

The motion to enforce settlement (document no. 97) is denied, but without prejudice to refiling, following the master's submission of a report and recommendation with respect to the issues the court proposes to refer (or other issues that may be referred), or, after the court has determined not to refer the matter.

Within thirty (30) days of the date of this order each party may file a memorandum addressing the following issues, and any others they deem relevant:

1.  Whether a master should be appointed, as the court proposes;

2.  Whether Attorney Garfunkel, or some other qualified person should be appointed;

3.  The scope of the referral (e.g., what issues should be addressed, what findings of fact should be made, what recommendations considered);

4.  Whether fees and costs should be assessed in connection with this enforcement proceeding;

5.  How compensation of the master and his expenses should be fixed and apportioned between the parties.

The parties might wish to consult the proposed amendments to Rule 53, Federal Rules of Civil Procedure. While not yet effective, the amendments do describe a procedure that ought to be followed, as beneficial to each party and the court. Obviously, the parties themselves are in the best position to identify any real problems that exist regarding compliance, and to adopt realistic solutions, without incurring the weighty expenses of unending litigation and master's fees. But, having failed to do so, the only available alternative is to press ahead, and, as that is the case, it is the court's view that the time has come to review the entire matter – not just whether some

7

breaches have or have not occurred, but whether the consent decree itself, as it stands, remains pertinent and necessary.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

September 30, 2003

cc:   Ronald K. Lospennato, Esq.
      Disabilities Rights Center, Inc.
    Ann F. Larney, Esq.
      Attorney General's Office
    Norman J. Fry, Esq.
    Rory Fitzpatrick, Esq.
    Kenneth J. Barnes, Esq.
    Roy S. McCandless, Esq.
    Peter T. Barbur, Esq.
    Gretchen L. Witt, Esq.
    Martha E. Rubio, Esq.
      U.S. Department of Justice
    David A. Garfunkel, Esq.