# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 18, 2011　　　　Decided December 2, 2011

No. 10-7149

NIKITA SHONTA PETTIES,
BY HER PARENT AND NEXT FRIEND, JUDY MARTIN, ET AL.,
APPELLEES

v.

DISTRICT OF COLUMBIA, A MUNICIPAL CORPORATION, ET AL.,
APPELLANTS

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:95-cv-00148)

———

*Carl J. Schifferle*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellants. With him on the briefs were *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General. *Robert C. Utiger*, Attorney, entered an appearance.

*Steven Ney* argued the cause for appellees. With him on the brief were *Jennifer Lav* and *Bradford P. Johnson*.

Before: ROGERS, GARLAND and GRIFFITH, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The District of Columbia appeals the denial of its motion to vacate a preliminary injunction (and related orders) pursuant to Rule 60(b)(5) of the Federal Rules of Civil Procedure.  The injunction was issued in 1995 in response to a class action complaint alleging that the District of Columbia was violating the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., by failing to timely pay private providers of special education services and thereby jeopardizing students' special education placements.  In moving to vacate the injunction after fourteen years, the District of Columbia argued that because it had "cured the systemic violations of law upon which the preliminary injunction and other payment orders were predicated" and was "in compliance with the [latest] payment order," there were "substantially changed circumstances concerning the administration and processing of provider payments" that made unnecessary and inequitable continued judicial supervision. Defs.' Mem. of P. & A. in Supp. of their Mot. to Vacate Prelim. Inj. and Payment Orders at 1, 10.

The district court denied the motion on two grounds: (1) dissolving the injunction and subsequent payment orders "would be disruptive to the status quo" and "counter-productive to the goal" of settling the case "in short order," and (2) the District of Columbia had "overstated both the relevance and the significance" of the Supreme Court's recent  decision in *Horne v. Flores*, 129 S. Ct. 2597 (2009).  Mem. Op. and Order Sept. 30, 2010 at 2 ("Mem. Op.").  Because the district court failed to address the changed circumstances, as  *Horne v. Flores* instructs, we reverse and remand the case for the district court to determine whether, in view of changed circumstances, the District of Columbia's Rule 60(b)(5) motion should be granted.

**I.**

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). On January 20, 1995, special education students and their parents filed a class action complaint alleging that the District of Columbia was depriving them of their civil rights under 42 U.S.C. § 1983 by refusing to provide them with a free, appropriate education as required by the IDEA. The defendants included the Superintendent of the District of Columbia Public Schools and the Director of the Special Education Branch in the Office of the Superintendent of the District of Columbia Public Schools. The plaintiffs alleged that the District of Columbia was jeopardizing students' special education placements by failing to pay private providers of special education services fully and on time. As a result, parents of special education students were being forced to choose between standing by as special education services were discontinued or paying for these services. The complaint noted, by way of example, that just days before the complaint was filed, the Chelsea School had written a letter to parents stating that because of the District of Columbia's failure to make full tuition payments for 42 of its 126 students, these students would be disenrolled unless their parents paid the tuition. The school explained that the District of Columbia had "[not] offered any assurances that the problem will be satisfactorily resolved, or, indeed, any assurance that Chelsea will be paid at all." Compl. ¶ 23 at 13 (quoting letter of January 17, 1995 from Timothy E. Hall, Chair of the Board of Governors of the Chelsea School).

The prayer for relief sought: (1) temporary and permanent injunctive relief requiring the defendants to pay immediately and

fully all debts to private providers of special education, and to give satisfactory written assurances of future timely payments; (2) regular reports from defendants on their compliance with any court order until such time as the district court determines the rights of the plaintiff class are no longer being violated or in immediate jeopardy of further violation and continued court monitoring is unnecessary; (3) payment by defendants of plaintiffs' reasonable attorneys' fees and costs; and (4) such other relief as is just and proper.

On March 17, 1995, the district court issued a preliminary injunction. The district court found that the District of Columbia had "not paid the costs of private special education placements or related services either fully or on a current or timely basis for at least the 1994-1995 school year," and that the District of Columbia's "ongoing refusal to meet [its] financial obligations . . . ha[d] placed plaintiffs' education in constant jeopardy." Prelim. Inj. ¶¶ 3, 6. It ordered the District of Columbia to pay all outstanding debts to private providers of special education services within two weeks. In a series of subsequent payment orders, issued as late as 2009, the district court set detailed payment deadlines. On July 8, 1997, the district court appointed a Special Master to assist with implementation of a transportation services plan and later extended the Special Master's duties to include resolving payment disputes between the District of Columbia and private providers. In a status report filed on May 4, 2005, the Special Master advised that "sufficient progress has been made to merit discussion of exit criteria for the portion of the case related to payments." Status Rpt. of Spec. Master, May 4, 2005 at 5. Referencing a meeting with the parties on April 20, 2005, the Special Master listed "four indicators" considered "necessary

to ensure . . . a reliable, fair and efficient payment process without judicial supervision." *Id.*[1]

On March 20, 2009, the District of Columbia filed a motion to vacate the preliminary injunction and related payment orders pursuant to Rule 60(b)(5). The "basic grounds" were "the changed circumstances since the preliminary injunction and subsequent payment orders were issued, the record of compliance with [its] obligations to pay private providers, and the new system for payment of private providers in the Education Reform Amendment Act of 2007," D.C. Law 17-9. Defs.' Mot. to Vacate Prelim. Inj. and Payment Orders at 1. "Under all the facts and circumstances," as set forth in the motion and attached exhibits, the District of Columbia argued that "it is inequitable and unnecessary to continue in effect the preliminary injunction and subsequent payment orders." *Id.* D.C. Law 17-9 had shifted responsibility for the vast majority of provider payments from the District of Columbia Public Schools ("DCPS") to the Office of the State Superintendent of Education ("OSSE"), which, in turn, had established a new automated system for tracking invoices. *See generally id.* at Ex. K. During the first two months that the OSSE's system was in place, all

---

[1] The "four indicators" were: (1) current Individual Education Programs ("IEPs") for every eligible special education student, with placements determined annually; (2) written payment procedures adopted as D.C. Board of Education polices or Superintendent directives; (3) a special education advisory panel to examine policies and regulations affecting special education students; and (4) accurate projections by the District of Columbia of special education costs based on rates commensurate with those in surrounding jurisdictions. Status Rpt. of Spec. Master, May 4, 2005 at 5–6. The Special Master also mentioned "other endeavors" in the parties' interests: a pro bono or low-cost dispute resolution service capable of resolving payment disputes with providers, and formation of an association to represent the common interests of the private providers. *Id.* at 6.

invoices were paid on time and the OSSE generated no payment disputes. *See* Defs.' Mem. of P. & A. in Supp. of Mot. to Vacate Prelim. Inj. and Payment Orders at 18, 21. In addition, the DCPS was paying 99% of provider invoices on time and only three disputes initiated by it had come before the district court in the previous year. *See id*. at 18–19. Consequently, "[n]o private schools or providers have threatened to displace DCPS students, or not take any more, or discontinue providing services to them, for many years." *Id*. at 12. Concluding that there can be "no serious doubt" that the "goal" of this litigation, "to correct systemic violations of the law . . . found in 1995," has been "achieved," the District of Columbia argued that "the changed circumstances, the evidence of [its] good faith . . . and the heavy costs that this litigation continues to impose upon the taxpayers of the District of Columbia, require the vacation of the preliminary injunction and all subsequent payment orders." *Id*. at 34–35.

The plaintiffs opposed the motion on the principal grounds that the District of Columbia had yet to demonstrate "sustained compliance" or to implement structural reforms identified by the Special Master to sustain compliance. *See* Pls.' Mem. in Opp'n to Defs.' Mot. to Vacate Prelim. Inj. and Paym't Orders at 2. Pointing to DCPS's performance in the first four months of 2009 in which it disputed 215 invoices and made 335 late payments, plaintiffs argued that the District of Columbia needed to establish a quick, effective, low-cost dispute resolution mechanism to replace the Special Master, a transparent and equitable system for setting rates for special education services, and a mechanism for monitoring the budget process to ensure sufficient funding for special education. *See supra* note 1. In response, the District of Columbia stated that the OSSE, which handles roughly 90% of payments to providers (as measured by dollar amount), was "in the process of developing an alternative dispute resolution mechanism" with the Office of

Administrative Hearings ("OAH"). Reply Mem. of Defs. in Supp. of Mot. to Vacate at 2.

While the Rule 60(b)(5) motion was pending, the parties attended a conference before a Magistrate Judge on April 10, 2009 and met with the Special Master in the spring and summer of 2010 in unsuccessful attempts at settlement. On April 20, 2010, the District of Columbia moved for a decision on its Rule 60(b)(5) motion. In that motion and a supplemental filing, it called the district court's attention to *Horne v. Flores*, decided June 25, 2009, which it argued "stands for the principle that where durable legal compliance is achieved by means other than compliance with the requirements of a court order, 'continued enforcement of the order is not only unnecessary, but improper.'" Supplement to Mot. of Defs. for Ruling in Resp. to Ct. Order of Apr. 20, 2010 at 11 (quoting *Horne v. Flores*, 129 S. Ct. at 2595). Because the District of Columbia "has long been in compliance with the [district] [c]ourt's orders *and* the law in the area of vendor payment," the District of Columbia suggested "[its] motion to vacate [did] not require the [district] [c]ourt to define the precise scope of *Horne* [*v. Flores*]." *Id.* at 2. Included with its motion was a compilation of the District of Columbia's monthly reports on the timeliness of provider payments and pending payment disputes. *See* Defs.' Mot. for a Ruling on their Mot. to Vacate the Prelim. Inj. and Paym't Orders at Exhibit U. Prior to the district court's ruling, monthly reports were filed through September 15, 2010.

On September 30, 2010, the district court denied the Rule 60(b)(5) motion. In a brief memorandum and order, the district court stated that (1) dissolving the preliminary injunction and subsequent payment orders "would be disruptive to the status quo and counter-productive to the goal of finally resolving this case in short order," and (2) the District of Columbia had

"overstated both the relevance and the significance of . . . *Horne v. Flores*." Mem. Op. at 2.

## II.

On appeal, the District of Columbia contends, in light of *Horne v. Flores*, that the district court abused its discretion in failing to vacate the sixteen-year-old preliminary injunction and the related payment orders. Interpreting *Horne v. Flores* to mandate dissolution of institutional reform litigation orders when the defendant has achieved compliance with federal law, the District of Columbia seeks reversal and vacation of the preliminary injunction and related payment orders because it has achieved "sustained compliance" with the IDEA's requirements. Appellants' Br. 26. Alternatively, it seeks a remand for further proceedings.

Rule 60(b)(5) provides that a district court may vacate an order or judgment if "applying it prospectively is no longer equitable." In the context of institutional reform litigation, the Supreme Court has instructed that district courts must employ "a flexible modification standard" because such decrees "often remain in place for extended periods of time" such that "the likelihood of significant changes occurring during the life of the decree is increased." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 380–81 (1992). The Court reasoned that a flexible standard is in the public interest "because such decrees 'reach beyond the parties involved directly in the suit and impact on the public's right to the sound and efficient operation of its institutions.'" *Id.* at 381 (quoting *Heath v. De Courcy*, 888 F.2d 1105, 1109 (6th Cir. 1989)). In *Horne v. Flores,* the Court elaborated on the nature of the Rule 60(b)(5) inquiry while reaffirming that district courts must engage in a "broad and flexible" inquiry that focuses "only [on] whether 'a significant change either in factual conditions or in law' renders continued

enforcement . . . 'detrimental to the public interest.'" 129 S. Ct. at 2596–98 (quoting *Rufo*, 502 U.S. at 384).

In *Horne v. Flores*, students and their parents filed a class action complaint alleging that the State of Arizona was violating the Equal Educational Opportunities Act of 1974 ("EEOA"), 20 U.S.C. § 1703(f), by providing inadequate instruction in the English Language Learner program ("ELL"). The district court entered a declaratory judgment for the plaintiff class and ordered the State to establish a funding system that would create a rational relationship between the amount of available funding and the actual costs of ELL instruction. *See* 129 S. Ct. at 2590. Fourteen years after the complaint was filed, the State moved for relief pursuant to Rule 60(b)(5) on the ground that changed circumstances had made continued enforcement of the district court's order inequitable. The Supreme Court reversed the denial of the motion on the ground that the court of appeals and the district court had "misunderstood . . . the nature of the inquiry that is required when parties . . . seek relief under Rule 60(b)(5)." *Id*. at 2588. Noting that Rule 60(b)(5)'s "[u]se of the disjunctive 'or' makes it clear that each of the provision's three grounds for relief is independently sufficient and therefore that relief may be warranted even if [defendants] have not 'satisfied' the original order," *id*. at 2597, the Court concluded that the lower courts had erred by failing to determine whether there was an ongoing violation of the EEOA, *see id*. at 2597–98. The Court instructed that if there is no ongoing violation of federal law and "a durable remedy has been implemented, continued enforcement of the order is not only unnecessary, but improper." *Id*. at 2595. The Court observed that the lower courts ought to have "appl[ied] a flexible standard that seeks to return control to state and local officials as soon as a violation of federal law has been remedied" and "inquir[ed] broadly into whether changed conditions" provided evidence of durable compliance with federal law. *Id*.

The District of Columbia's brief recites detailed, undisputed statistical evidence showing that it is timely paying private providers of special education services. Between October 2009 and September 2010, the one-year period preceding the denial of the District of Columbia's Rule 60(b)(5) motion, the OSSE paid 98.9% of invoices on time and the DCPS paid 94.8% of invoices on time. *See* Appellants' Br. 13–14 (Tables). During this period the OSSE received 6,012 invoices, of which 46 were paid late, 35 were disputed in part, and one was disputed in full; the DCPS received 1,816 invoices, of which 89 were paid late, 170 were disputed in part, and 75 were disputed in full. *See id.* 13–16 (Tables). The record also shows: The OSSE and the DCPS have adopted written policies and procedures for making payments in conformance with the payment orders; the OSSE is successfully using an automated system for processing invoices and tracking payment deadlines; and the OSSE entered into a Memorandum of Understanding with the OAH in January 2009, providing the latter will adjudicate payment disputes between providers and the OSSE. And, the District of Columbia has promulgated a final rule, effective August 1, 2011, on provider rates. *Certificates of Approval for Nonpublic Special Education Schools and Programs Serving Students with Disabilities Funded by the District of Columbia and Special Education Rates*, 5 D.C.M.R. §§ 2821, 2833–34, 2844–54; *see* 58 D.C. Reg. 5442 (July 2011). As a consequence of its actions, the District of Columbia states, "no student's placement or services have been jeopardized, due to non-payment, for many years." Appellants' Br. 18.

Counsel for the plaintiffs acknowledged during oral argument that "few if any placements are being jeopardized by nonpayment" and that this circumstance has "obtained for several years." Oral Arg. Tape at 10:56-11:08. The parties thus agree that the District of Columbia is in compliance with the IDEA with regard to provider payments; they disagree as to

whether the various steps the District of Columbia has undertaken suffice to demonstrate that court supervision is no longer necessary. Counsel for the plaintiffs argued that a durable remedy requires establishment and testing of a mechanism to resolve payment disputes to replace the Special Master and the adoption of time limits for initiating payment disputes. *See id.* at 14:41-53, 17:05-13. Counsel for plaintiffs appeared to acknowledge that the other structural reforms and actions referenced in plaintiffs' opposition to the District of Columbia's Rule 60(b)(5) motion were not relevant, at least at this stage of the litigation. *See, e.g.*, *id.* at 16:10-55.

The District of Columbia responds that whether it has implemented a durable remedy is irrelevant at this stage. Durability, it suggests, is relevant only where a defendant moves for relief from a final judgment, not where a defendant seeks relief from a preliminary injunction and related orders. In *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006), this court explained that a preliminary injunction is not based on a judgment or finding of liability, but rather on the need to prevent an "injury . . . of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id*. at 297 (citation and internal quotation marks omitted). Because plaintiffs do not dispute that "few if any" special education placements have been threatened by nonpayment for "several years," the District of Columbia emphasizes that there is "no risk" of imminent harm to a class member. Oral Arg. Tape at 10:56-11:08; Reply Br. 10. With regard to identifying an alternative dispute resolution mechanism, the District of Columbia maintains it is sufficient as a matter of law that an adequate alternative forum exists, namely in the Superior Court of the District of Columbia. Further, it notes, the overwhelming majority of provider payments are handled by the OSSE and any payment disputes with the OSSE will be adjudicated by the OHA. And, it advises that the DCPS

is prepared to enter into a similar agreement with the OHA so that these disputes also can be adjudicated by the OHA. *See* Appellant's Br. 31-32; Reply Br. 13.[2]

Although *Horne v. Flores* did not involve a pre-judgment preliminary injunction, the Court's instruction that continued enforcement of an order entered to remedy a violation of federal law is unnecessary and improper if there is no ongoing violation of federal law and "a durable remedy has been implemented," is instructive. *Horne v. Flores*, 129 S. Ct. at 2595. The District of Columbia acknowledges, in effect, that the determination of whether preliminary injunctive relief is required because plaintiffs are at risk of imminent harm is tied to the question of whether it has remedied the systemic payment problems that caused the district court to conclude in 1995 it was violating the IDEA. If the plaintiffs, in fact, face "no risk" of imminent harm, it is because the District of Columbia has established procedures for paying providers in a timely manner to ensure compliance with the IDEA in the future, eliminating the systemic causes that jeopardized special education placements during the 1994-1995 school year.

The district court's Rule 60(b)(5) inquiry fell short of what is required by *Horne v. Flores*. The question raised by the District of Columbia's motion was whether changed circumstances had rendered continued enforcement of the

---

[2] By letter of November 16, 2011, the District of Columbia provided as supplementary authority a recently executed Memorandum of Understanding between the DCPS and the OHA for adjudication of payment disputes involving DCPS and private special education providers. *See* FED. R. APP. P. 28(j).

preliminary injunction and related payment orders contrary to the public interest because special education placements were, and had been, secure for years. The district court neither determined whether the District of Columbia was making timely private provider payments under the IDEA, nor evaluated the systemic evidence that the District of Columbia is and has been in compliance with the payment orders. Critically, it never inquired into whether the risk of imminent harm that it found warranted injunctive relief in 1995 — namely, that special education students were in jeopardy of losing special education services to which they were entitled under the IDEA — had been ameliorated, if not eliminated, as a result of changed circumstances.

The district court has overseen this litigation for many years, and this court would benefit from its assessment of the likely risk of imminent harm to plaintiffs as a result of untimely private provider payments were court supervision to be withdrawn. Although actions taken by the District of Columbia appear to have remedied the systemic payment problems that existed in 1995, plaintiffs' concerns about the appropriate alternative to dispute resolution by the Special Master and the time limits for initiation of payment disputes require fact finding best done in the district court. Accordingly, we remand the case for the district court to conduct the necessary factual inquiry and to determine whether, in view of the changed circumstances, the District of Columbia's motion to vacate the preliminary injunction and related payment orders pursuant to Rule 60(b)(5) should be granted.